**LUMBERMEN'S UNDERWRITING ALLIANCE, et al., Plaintiffs,**

v.

**MOBIL OIL CORPORATION, et al., Defendants.**

**Civ. Nos. 83-1094, 83-1255.**

United States District Court, D. Idaho.

July 11, 1985.

Craig L. Meadows, P. Craig Storti, Kenneth C. Howell, Hawley Troxell Ennis & Hawley, Boise, Idaho, for Lumbermen's Underwriting Alliance.

Joseph M. Imhoff, Michael W. Moore, Jerry Goicoecheas, Boise, Idaho, for Bruce Hardy, Linda Hardy, The Estate of Boyd Smith, deceased, and Emma Loyne Smith.

Howard Humphrey, Max Eiden, Jr., Rory R. Jones, Clemons Cosho & Humphrey, P.A., Boise, Idaho, for Mobil Oil Corp.

Quane Smith Howard & Hull, Boise, Idaho, for Hydraulic & Air Equipment Co.

Timothy C. Walton, Lyons Bohner Chasan & Walton, Boise, Idaho, for Hollenbeak.

David W. Cantrill, Cantrill Skinner & Sullivan, Boise, Idaho, for Salmon River Lumber Co. and Employers Ins. of Wausau.

Michael G. Brady, Brady McDaniel & Matthews, Chd., Boise, Idaho, for Grangeville Grange Supply.

## MEMORANDUM OPINION

RYAN, District Judge.

### I. INTRODUCTION

This action arises from an explosion and fire which occurred at the Riggins, Idaho, sawmill of the Salmon River Lumber Company on April 23, 1982. The fire destroyed the mill, killed one employee, and injured several others.

Plaintiff Lumbermen's Underwriting Alliance (LUA) is a reciprocal insurance exchange bringing suit as subrogee to the rights of the Salmon River Lumber Company. The other plaintiffs represent the interests of those persons killed or injured in

the fire. Plaintiffs assert claims sounding in both contract and tort. These claims arise from the circumstances surrounding the services and materials supplied to the lumber company for the maintenance of an air compressor which allegedly was the origin of the explosion and fire.

■ Although this case has been proceeding before the court for a considerable period of time and, in fact, has been set down for trial in November of 1985, the court was heretofore unaware of a serious question relating to the court's subject matter jurisdiction over this action. This question was brought to the court's attention in LUA's motion for class certification filed April 30, 1985. Jurisdiction in this case is based upon diversity of citizenship. LUA is a reciprocal insurance exchange and, as such, is an unincorporated association for purposes of determining citizenship.[1] An unincorporated association's citizenship for purposes of determining diversity is that of each of its members. *Navarro Savings Association v. Lee*, 446 U.S. 458, 461, 100 S.Ct. 1779, 1782, 64 L.Ed.2d 425 (1980). LUA's membership includes citizens of all states except Hawaii. Consequently, diversity of citizenship is lacking between LUA and the named defendants unless LUA can be properly certified as a class represented by a diverse member[2].

■ Subsequent to LUA's motion for class certification, Defendants Mobil Oil Corporation and Hydraulic & Air Equipment Company moved to dismiss for lack of subject matter jurisdiction. The issues raised by the pending motions involve the interaction of Rules 17(b) and 23.2 of the Federal Rules of Civil Procedure and Idaho

Code § 41–2905(2). Rule 17(b) of the Federal Rules of Civil Procedure provides that the federal courts must look to state law in a diversity action to determine the capacity of a party to sue. Idaho Code § 41–2905(2) provides that a reciprocal insurer "shall" sue and be sued in its common name. Rule 23.2 of the Federal Rules of Civil Procedure provides a procedure by which unincorporated associations may sue or be sued as a class. Because the court determines that the members of LUA cannot bring suit in their individual capacity under the laws of the State of Idaho, the class action device afforded by Rule 23.2, as a procedure allowing the members to bring suit in their individual capacity, is not available. Consequently, there is no diversity of citizenship between LUA and the named defendants, and the claims of LUA must be dismissed for lack of subject matter jurisdiction.

## II. DISCUSSION

Defendants' argument in support of their motions to dismiss is two-fold. First, defendants assert Rule 23.2 is only available when state law does not allow an unincorporated association to sue in its common name. The purpose behind Rule 23.2 is satisfied where, as here, the state allows an unincorporated association to sue or be sued in its common name. Defendants conclude, therefore, that resort to Rule 23.2 is no longer necessary. Second, defendants argue the legislature's use of the word "shall" in Section 41–2905 effectively excludes suit by or against an unincorporated association through means other than as an entity, i.e., an unincorporated association has capacity to sue or be sued *only* in its

---

1. Briefing in this matter filed on behalf of LUA conceded LUA's status as an unincorporated association only for purposes of consideration of its motion for class certification. However, at oral argument LUA made no attempt whatsoever to assert that it might be anything but an unincorporated association. Implicit in LUA's position at oral argument was its concession that it is an unincorporated association and should be treated as such when determining its citizenship.

2. LUA seeks to have its attorney-in-fact, U.S. Epperson Underwriting Company, named as class representative. For purposes of determining diversity in a class action, only the citizenship of the class representative is considered. *See Snyder v. Harris*, 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969); *Supreme Tribe of Ben-Hur v. Cauble*, 255 U.S. 356, 41 S.Ct. 338, 65 L.Ed. 673 (1921). U.S. Epperson is incorporated in the State of Missouri and its principal place of business is in Florida, and therefore, diversity exists if LUA is allowed to proceed as a class with U.S. Epperson as class representative.

common name. Therefore, state law does not give the unincorporated association members capacity to sue or be sued as a class under Rule 23.2.

Plaintiff's argument in favor of allowing suit as a class is also two-fold. First, Section 41–2905(2) is not exclusive, but simply gives an unincorporated association additional rights which it did not previously hold. Because an unincorporated association could historically sue as a class, it retains the right to do so under Rule 23.2. Second, plaintiff argues that Rule 23.2 does more than merely allow an unincorporated association to be treated as an entity where not so provided by state law. Rule 23.2 also provides a mechanism by which unincorporated associations can bring suit in federal court by appointing diverse representatives of the class, thus avoiding the difficulties of establishing complete diversity (where the association has a large number of members).

### A. *Scope of Class Actions under Rule 23.2*

■ At common law, an unincorporated association had no legal identity as an entity, but was simply a collection of its individual members. *United Mine Workers of America v. Coronado Coal Co.*, 259 U.S. 344, 385, 42 S.Ct. 570, 574, 66 L.Ed. 975 (1922); *see generally* Note, *Capacity and Class Actions under Federal Rule 23.2*, 61 B.U.L.Rev. 713, 713 (1981). Thus, it was necessary to join all of the members as parties in a suit by or against the association. Alternatively, if the membership of the association was so large that joinder was impracticable, suit could be maintained as a class action. In such a class action, as with joinder, the association itself was not a party to the suit. In addition to alleviating the practical difficulties of joinder, the class action also allowed large unincorporated associations access to the federal forum where it would not otherwise exist by the simple expedient of choosing a diverse member as class representative.

■ Rule 17(b) provides that in federal diversity cases, state law determines a par-

ty's capacity to sue or be sued. Even though state law might give an unincorporated association the capacity to sue or be sued as an entity, the citizenship of each of the members must still be considered for diversity purposes in federal court. *See Navarro Savings Association v. Lee*, 446 U.S. at 461, 100 S.Ct. at 1782 (1980); *United Steelworkers of America v. R.H. Bouligny, Inc.*, 382 U.S. 145, 86 S.Ct. 272, 15 L.Ed.2d 217 (1965). Consequently, while a state's grant of entity status eliminated the practical difficulties of joinder, it left many large unincorporated associations in no better position with regard to access to the federal forum than comparable associations in states which did not allow suit as an entity.

Prior to 1966, class actions in federal court by or against an unincorporated association were brought pursuant to Rule 23 of the Federal Rules of Civil Procedure. In 1966, the Supreme Court adopted Rule 23.2 of the Federal Rules of Civil Procedure which separately addressed class actions brought by or against the members of an unincorporated association. The adoption of Rule 23.2, however, did not help clarify the relationship between Rule 23, governing class actions, and Rule 17(b), governing capacity to sue. Those courts which have addressed the impact of a state's grant of entity status on the availability of a class action under Rule 23, or subsequently Rule 23.2, have reached inconsistent results. In those cases decided subsequent to adoption of Rule 23.2, this inconsistency results primarily from divergent treatment of the advisory committee note to Rule 23.2. That note provides:

Although an action by or against representatives of the membership of an unincorporated association has often been viewed as a class action, the real or main purpose of this characterization has been to give "entity treatment" to the association when for formal reasons it cannot sue or be sued as a jural person under Rule 17(b).

Those cases adopting a restrictive view of the scope of Rule 23.2 interpret the refer-

ence to "entity treatment" in the advisory committee note to mean a grant of capacity from the forum state to sue and be sued as an entity. *E.g., Suchem, Inc. v. Central Aguirre Sugar Co.,* 52 F.R.D. 348 (D.P.R. 1971). Where state law grants an unincorporated association capacity to sue and be sued as an entity, the purpose of Rule 23.2 has been satisfied and resort to the class action device provided by that rule is not necessary. *Id.* Under this approach, LUA is given entity treatment under Idaho Code § 41–2905(2), and therefore, LUA may not resort to the class action device provided by Rule 23.2.

Other courts have interpreted the scope of Rule 23.2 more broadly. *See Kerney v. Fort Griffin Fandangle Association, Inc.,* 624 F.2d 717 (5th Cir.1980); *Oskoian v. Canuel,* 269 F.2d 311 (1st Cir.1959). Under this approach, LUA could sue as a class under Rule 23.2 unless the law of Idaho prohibited suit against the individual members of the Association. As long as the members of an unincorporated association have the individual capacity to sue or be sued under state law, the class action device afforded by Rule 23.2 is appropriate.

The court is persuaded that the broad interpretation of Rule 23.2 reflected in the *Kerney* and *Oskoian* decisions is correct. The language of Rule 23.2 suggests no "entity treatment" limitation, nor does the advisory committee reference to "entity treatment" specifically refer to capacity to sue or be sued as an entity. From the evolution of the legal identity of an unincorporated association it is apparent that entity treatment allowed a party suing or being sued by an unincorporated association to avoid the practical difficulties of joining all members of the association. Such "entity treatment" can be achieved by suing the association in its common name *or* by suing the members of the association individually as a class. The broad interpretation is also supported by the advisory committee's citation of the First Circuit's decision in *Oskoian v. Canuel* (applying the broad interpretation), and the Fourth Circuit's decision in *Tunstall v. Brotherhood of Locomotive Firemen and Engine-*

*men,* 148 F.2d 403 (4th Cir.1945) (which adopted the broad approach in dictum).

B. *Capacity of the Individual Members to Sue or be Sued*

Having adopted the broad interpretation of Rule 23.2, the class procedure provided by that rule will be available to LUA unless the individual members of the association do not have capacity to sue or be sued under the laws of the State of Idaho. Title 41, Chapter 29, Idaho Code, regulates the operation of reciprocal insurance exchanges in Idaho. As noted earlier, Section 41–2905 provides that, "a reciprocal insurer shall ... (2) Sue and be sued in its own name." The parties disagree as to whether or not the legislature intended to allow suit exclusively by or against the entity and not by or against the members as individuals.

Use of the mandatory term "shall" is, of course, indicative of exclusivity. The exclusivity of the capacity to sue or be sued as an entity provided in Section 41–2905 is further supported by other provisions in Chapter 29. The relevant provisions are as follows:

> 41–2910 ... (e) Except as to nonassessable policies, a provision for a contingent several liability of each subscriber in a specified amount which amount shall be not less than one (1) nor more than ten (10) times the premium or premium deposit stated in the policy. [Nonassessable policies are allowed where the entity has sufficient assets to cover the entire contingent liability.]

> 41–2915 ... (2) Any judgment .. shall be binding upon each of the insurer's subscribers as their respective interests may appear, but in an amount not exceeding their respective contingent liabilities, if any, the same as though personal service of process was had upon each such subscriber.

> 41–2921 ... (1) The liability of each subscriber, other than as to a nonassessable policy, for the obligations of the reciprocal insurer shall be an individual, several and proportionate liability, and not joint.

(2) Except as to a nonassessable policy, each subscriber shall have a contingent assessment liability, in the amount provided for in the power of attorney or in the subscribers' agreement, for payment of actual losses and expenses incurred while his policy was in force. Such contingent liability may be at the rate of not less than one (1) nor more than ten (10) times the premium or premium deposit stated in the policy....

41–2922 ... (1) No action shall lie against any subscriber upon any obligation claimed against the insurer until a final judgment has been obtained against the insurer and remains unsatisfied for thirty (30) days.

(2) Any such judgment shall be binding upon each subscriber only in such proportion as his interests may appear and in amount not exceeding his contingent liability, if any.

It is clear that the referenced sections contemplate suit against the entity itself rather than suit against the individual members. Further, Section 41–2921(1) expressly eliminates the doctrine of joint liability. The referenced sections also contemplate suit on nonassessable policies. In such cases, the entity has enough assets to cover all contingent liability and, therefore, suit against the individual members is unnecessary. While it is implicit in Sections 41–2905, 2910, 2915, and 2921 that suit against the individual members is precluded, Section 41–2922(1) *expressly* prohibits suit against an individual subscriber until final judgment has first been obtained against the association. The provisions of Title 41, Chapter 29, leave little doubt that a member of a reciprocal insurance exchange cannot be sued in Idaho to recover on a claim which is based upon the activities of the insurance exchange except in a collection action subsequent to entry of judgment against the insurance exchange itself.

The history of Section 41–2905 also supports this conclusion. The predecessor to the current Section 41–2905 provided that, "an exchange or reciprocal shall have the right to sue or be sued in its own name." 1947 Idaho Sess.Laws, ch. 270, § 4. The Idaho Legislature's change from the earlier permissive language to the current mandatory language suggests the provisions of Section 41–2905(2) are exclusive.

■ The court finds that under Idaho law, the individual members of a reciprocal insurance exchange do not have capacity to sue or be sued in an original action based upon an obligation claimed for or against the insurance exchange.[3]

Finally, LUA asserted during oral argument on these motions that LUA as a class constitutes an "entity" within the meaning of Idaho Code § 41–2905. This argument is fundamentally in error. Rule 23.2 provides only a procedural mechanism for suit against the members individually. *Generally* 7 C. Wright & A. Miller, *Federal Practice and Procedure* § 1751 (1972). It is axiomatic that an entity cannot sue as a class because it is itself a unique individual with or without the capacity to sue.[4] Nor does Rule 23.2 create capacity in the individual members to bring suit. Capacity in diversity actions is expressly to be deter-

---

**3.** With the exception of Section 41–2905, the referenced provisions speak only in terms of suit against the insurer rather than by the insurer. From this, it might be suggested that while the individual members cannot be sued on obligations against the insurer, they may sue as individuals on behalf of the insurer. LUA has not asserted this argument, nor is it persuasive. Capacity to sue and be sued is an integral concept as reflected by the language of Section 41–2905 which speaks in terms of suit by and against an entity as a unified grant of capacity.

**4.** There can be no question that "entity" as it is used in reference to reciprocal insurers in Sec-

tion 41–2905 does not contemplate the aggregation of the individual members, but refers to the management structure of the association itself. For purposes of illustration, the "entity" referred to in Section 41–2905 is analogous to a corporation as opposed to an aggregation of the corporation's stockholders. A contrary conclusion would eliminate any distinction between suit as an entity and suit by joinder of all members, the method already existing at common law. Indeed, if such were the case, there would be no need for statutes providing for suit as an entity.

**1172**

mined by state law. Fed.R.Civ.P. 17(b). If the individual members themselves cannot sue or be sued, a procedural mechanism for such a suit is, of course, superfluous. A procedure for suit by the members individually presupposes the individual member's capacity to sue.

### III.  CONCLUSION

The procedural device provided in Rule 23.2 of the Federal Rules of Civil Procedure allowing the individual members of LUA to maintain suit as a class will be available to LUA where, under the laws of the State of Idaho, the individual members have the capacity to maintain such an action.  The provisions of Idaho Code § 41–2905 requiring LUA, as a reciprocal insurance exchange, to bring suit exclusively as an entity, preclude suit on behalf of the individual members.  Lacking capacity to maintain this action, the members cannot utilize the class action device afforded by Rule 23.2.

For purposes of diversity, the citizenship of LUA, as an unincorporated association, is that of the citizenship of each of its members.  Complete diversity does not exist between the members of LUA and the defendants, and consequently, this court lacks subject matter jurisdiction over LUA's claims.  Those claims must, therefore, be dismissed.