**The NATIONAL BANK OF WASHINGTON, Plaintiff,**

v.

**Gary MALLERY, Defendant.**

**Civ. A. No. 87–318.**

United States District Court, District of Columbia.

Sept. 2, 1987.

---

**24**

Stephen M. Foster, Dag Wilkinson, Foster & Wilkinson, Washington, D.C., David L. Braverman, Andrew O. Schiff, Klehr, Harrison, Harvey, Branzburg, Ellers & Weir, Philadelphia, Pa., for plaintiff.

Jeffrey A. Dunn, James A. Dunbar, Jeffrey J. Peck, Venable, Baetjer, Howard & Civiletti, Washington, D.C., John Henry Lewin, Jr., Venable, Baetjer & Howard, Baltimore, Md., for defendant.

CHARLES R. RICHEY, District Judge.

## INTRODUCTION

In the spring of 1984, plaintiff funded a promissory note, issued to Columbia Data Products, in the amount of $9.5 million. *Complaint* at ¶ 19. Plaintiff alleges that it relied on financial statements prepared by the accounting firm of Deloitte, Haskins and Sells ("Deloitte") when it decided to fund that $9.5 million note. *Id.* at ¶ 20. Plaintiff now claims that those statements were materially misleading and as a result has brought this action against defendant Mallery, who is sued both individually and as a representative of a putative defendant class consisting of Deloitte partners.[1]

Plaintiff has brought this suit in diversity, pursuant to 28 U.S.C. § 1332, as it has not alleged any claims under federal law or the Constitution.

Now before the Court is defendant's motion to dismiss this action or to transfer it to the United States District Court for the District of Maryland. Defendant first claims that the Court lacks subject matter jurisdiction over this suit. Defendant also claims that the suit must be dismissed because the Court lacks personal jurisdiction over defendant Mallery. Finally, he argues in the alternative that the United States District Court for the District of Maryland is the most appropriate and convenient forum for this action.

The Court has carefully considered defendant's motions, the supporting and opposing legal memoranda, the entire record in this case, and the underlying law. The Court has concluded that it must deny all of defendant's motions, but it will deny the motions to dismiss for want of subject matter jurisdiction and for transfer of this suit without prejudice to renewal, if appropriate, under conditions set forth in this Opinion and the accompanying Order.

## THIS COURT HAS SUBJECT MATTER JURISDICTION OVER THIS ACTION.

Defendant has challenged this Court's subject matter jurisdiction over this action. The exact nature of defendant's argument is somewhat difficult to discern. If he is attempting to argue that the members of a partnership cannot be treated as a class, he is obviously in error. Fed.R. Civ.P. 23.2 explicitly provides that unincorporated associations, a broad category that includes partnerships, may sue or be sued as a class[2]; case law has added a gloss to

---

1. Plaintiff filed a "Complaint with Class Allegations" on February 10, 1987. On May 8, 1987, plaintiff moved to certify the defendant class. On June 4, 1987, the Court approved a stipulation staying that motion until resolution of the motion to dismiss or transfer the case. Under the terms of the stipulation, defendant need not respond to the motion for class certification until eleven days after the Court's decision upon the Motion to Dismiss or Transfer the case.

2. Rule 23.2 provides:

> An action brought by or against the members of an unincorporated association as a class by naming certain members as representative parties may be maintained only if it appears that the representative parties will fairly and adequately protect the interests of the association and its members. In the conduct of the action the court may make appropriate orders corresponding with those described in Rule 23(d), and the procedure for dismissal or compromise of the action shall correspond with that provided in Rule 23(d).

this Rule so that it now appears that an unincorporated association may sue or be sued as a class only where state law does not allow suit by or against the group as an entity. *See, e.g., Lumbermen's Underwriting Alliance v. Mobil Oil Corp.*, 612 F.Supp. 1166, 1171–72 (D.Id.1985); *Federal Practice and Procedure:* Civil at § 1861. As District of Columbia law does not permit an unincorporated association to sue or be sued as an entity, *see Day v. Avery*, 548 F.2d 1018 (D.C.Cir.1976), *cert. denied*, 431 U.S. 908, 97 S.Ct. 1706, 52 L.Ed.2d 394 (1977), plaintiff is not barred from suing the members of the partnership as a class.

The Court ordinarily has subject matter jurisdiction over a diversity suit brought as a class action when there is diversity of citizenship between the class representatives and every opposing party; the citizenship of class members who are not designated "representatives" is irrelevant to the jurisdictional inquiry. *Snyder v. Harris*, 394 U.S. 332, 340, 89 S.Ct. 1053, 1058, 22 L.Ed.2d 319 (1969); *Supreme Tribe of Ben-Hur v. Cauble*, 255 U.S. 356, 41 S.Ct. 338, 65 L.Ed. 673 (1921); *Federal Practice and Procedure:* Civil at § 1755. By naming defendant Mallery, a citizen of Maryland, the representative of the putative defendant class, plaintiff, a citizen of the District of Columbia, has complied with that rule. *Id.*

Courts in other jurisdictions have interpreted Rule 23.2 precisely as plaintiff has done; for purposes of diversity jurisdiction, they look only to the citizenship of the member of the unincorporated association who was named as class representative. *See, e.g., Kerney v. Fort Griffin Fandangle Association, Inc.*, 624 F.2d 717 (5th Cir.1980); *Lumbermen's Underwriting Alliance v. Mobil Oil Corp.*, 612 F.Supp. 1166 (D.Ind.1985); *see also Federal Practice and Procedure:* Civil at § 1861; J. Moore and J. Kennedy, *Moore's Federal Practice* ¶ 23.2.02. Defendant, however, argues that, for the purposes of determining whether the Court has diversity jurisdiction over a class consisting of partners, the Court must find that *every* partner has diverse citizenship from the opposing party. As the issue appears to be one of first impression in this Circuit, the Court cannot rest on foreign case law and scholarly comment but must explore the arguments in some detail.

If defendant were correct, and the citizenship of each Deloitte partner relevant to the diversity question, the Court would not have jurisdiction over this action. The four Deloitte partners who are citizens of the District of Columbia would destroy the complete diversity necessary to sustain jurisdiction. *See Great Southern Fire Proof Hotel Co. v. Jones*, 177 U.S. 449, 456, 20 S.Ct. 690, 693, 44 L.Ed. 842 (1900); *Anchorage-Hynning & Co. v. Moringiello*, 697 F.2d 356, 357 n. 1 (D.C.Cir.1983); *see also* C.A. Wright and A. Miller, *Federal Practice and Procedure:* Jurisdiction at § 3630. But defendant's reading of the law is not correct.

Defendant's argument hinges on the Advisory Committee Note to Fed.R.Civ.P. 23.2. That Note states:

> Although an action by or against representatives of the membership of an unincorporated association has often been viewed as a class action, the real or main purpose of this characterization has been to give 'entity treatment' to the association when for formal reasons it cannot sue or be sued as a jural person under Rule 17(b).

*Note to Rule 23.2, reprinted in Federal Civil Judicial Procedure and Rules* (1987 edition), at 68. Relying on this statement, defendant contends that Rule 23.2 was designed only to extend a form of "entity status," rather than treatment of litigants as a class, to unincorporated associations that otherwise could not be sued in a federal forum.

At base, this amounts to a contention that Fed.R.Civ.P. 23.2 demands that a suit against a class consisting of the members of an unincorporated association be treated as if it were a suit against the entity. But capacity to sue or be sued as an entity is determined *not by federal law but by the law of the forum state. See* Fed.R.Civ.P. 17(b); *see also Day v. Avery*, 548 F.2d 1018 (D.C.Cir.1976), *cert. denied*, 431 U.S. 908,

97 S.Ct. 1706, 52 L.Ed.2d 394 (1977). If the Court were to treat a suit against the partnership class as if it were a suit against the entity of the Deloitte partnership, despite the District of Columbia's decision to deny the partnership the status of a jural person, the Court would effectively negate the District's decision not to extend entity treatment to the partnership. Both Rule 17(b) and the commands of the *Erie* doctrine forbid this denigration of the laws of the sovereign states (a category that, for this purpose, includes the District of Columbia). *See Erie Railroad v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

Nor can defendant legitimately suggest that the class suit is improper because, by the artful choice of class representative, plaintiff can "create" diversity of citizenship when there actually are non-diverse members of the defendant class. By looking only to the citizenship of the class representative, the law permits, if not encourages, parties to choose representatives in order to ensure that diversity jurisdiction will lie. *See, e.g., Supreme Tribe of Ben-Hur v. Cauble,* 255 U.S. 356, 41 S.Ct. 338, 65 L.Ed. 673; *Kerney v. Fort Griffin Fandangle Association, Inc.,* 624 F.2d 717, 720 (5th Cir.1980) (class composed of members of unincorporated association); *Federal Practice and Procedure:* Civil, at § 3606.

Thus, the Court must conclude that plaintiff has not acted impermissibly by seeking to sue defendants as a class and by naming as class representative a Deloitte partner whose citizenship is diverse from plaintiff's. The Court therefore will find that it has subject matter jurisdiction over this action and it will deny defendant's motion to dismiss this suit. The Court will, however, deny the motion without prejudice to renewal by defendant should the Court deny plaintiff's motion for class certification. If the Court does not certify the class, defendant may renew the instant motion either if plaintiff attempts to sue the individual Deloitte partners or if defendant can show that plaintiff's failure to sue all Deloitte partners is a sham perpetrated in order to ensure existence of subject matter jurisdiction.

## THE COURT HAS PERSONAL JURISDICTION OVER DEFENDANT MALLERY.

Under Fed.R.Civ.P. 4(e), the Court may exercise personal jurisdiction over non-resident defendant Mallery if the Court can obtain jurisdiction over him under the long-arm statute of the District of Columbia, D.C.Code § 13–423 (1981), and if the exercise of that jurisdiction would be consistent with the constraints of the due process clause. *See, e.g., Reuber v. United States,* 750 F.2d 1039, 1049 (D.C.Cir.1984). Defendant Mallery argues that neither the long-arm statute nor the commands of due process permit the Court to exercise jurisdiction over him. The Court disagrees.

Two provisions of the District's long-arm statute provide over non-resident defendants charged with commission of a tort. These provisions read:

(a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's

(3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;

(4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia.

D.C.Code § 13–423(a)(3), (4).

From the Complaint, it appears that Deloitte's report containing the alleged misrepresentation was written in Maryland, *see Complaint,* Exhibit A, and sent to plaintiff in the District of Columbia for its lending decisions. *Id.* at ¶¶ 13–23. No District of Columbia Court has yet decided where the "act" of misrepresentation is committed when the misrepresentation is made outside the District of Columbia but communicated inside the District's bounds.

There is, however, a useful parallel with a libel or slander that is made outside the

District but communicated, via wire, mail, or publication, inside the District of Columbia. With respect to these torts, District of Columbia law defines the "act" of the statement as occurring where the statement was written or spoken, not where it was understood by the third party. *See, e.g., Moncrief v. Lexington Herald-Leader Co.,* 807 F.2d 217 (D.C.Cir.1986); *Margoles v. Johns,* 483 F.2d 1212, 1218 (D.C.Cir. 1973). Applying the logic that guided these decisions, the Court finds that defendant's act of allegedly misrepresenting Columbia Data's finances occurred in Maryland, where the report was written. *See Complaint,* Exhibit A. Thus, personal jurisdiction over defendant Mallery is available, if at all, only under § 13–423(a)(4).

Under this section of the long-arm statute, the Court must first find that acts committed by Mallery or his agents outside the District of Columbia caused the alleged tortious injury inside the District of Columbia. There is no question that defendant Mallery, like the putative class of which he has been named representative, must be deemed responsible for the alleged misrepresentation made by his partner. *See* D.C. Code § 41–112—114. Thus, if the tortious injury of which plaintiff complains occurred within the District of Columbia, and defendant, himself or through his partners, regularly conducts business in the District of Columbia, or derives substantial revenue from services performed in the District of Columbia, the Court has jurisdiction over defendant under § 13–423(a)(4). On the record now before the Court, it has jurisdiction over defendant's person.

First, the information before the Court puts the situs of plaintiff's injury in the District of Columbia. Plaintiff allegedly received the allegedly misleading financial statements in the District of Columbia. *Plaintiff's Memorandum in Opposition to Motion to Dismiss* at 12. Plaintiff allegedly relied on those statements when deciding to fund the loan in the District of Columbia, *Complaint* at ¶ 20, and allegedly suffered injury in the District of Columbia when Columbia Data Products could not repay the loan issued in reliance on defend-

ant's statements. *Id.* at 25. Repayment was to occur in the District of Columbia. *Master Promissory Note, attached to Complaint* as Exhibit 2.

Defendant asserts that plaintiff's financial losses are merely a means of measuring plaintiff's injury, rather than an indicia of the injury itself. To support this proposition, defendant cites to *Leaks v. Ex-Lax, Inc.,* 424 F.Supp. 413 (D.D.C.1976) (product liability and negligence case) and *Aiken v. Lustine Chevrolet,* 392 F.Supp. 883 (D.D.C. 1975) (emotional distress and impaired credit rating case). Unlike those cases, in which the plaintiffs allegedly suffered some physical or emotional injury, in this case the only injury is the financial loss that allegedly resulted from plaintiff's reliance on the allegedly misleading statements prepared by Deloitte. Thus, far from a measure of injury, pecuniary loss *is* the injury as far as plaintiff is concerned.

Defendant tries to persuade the Court that the real situs of plaintiff's injury is Maryland, the location of the overvalued collateral for the loan to Columbia Data Products. This confuses the act causing plaintiff's injury with the injury itself. *See, e.g., Reuber v. United States,* 750 F.2d 1039, 1050 (D.C.Cir.1984) (act separate from injury under D.C. long-arm statute). Plaintiff was not injured by the amount of the collateral, or the misrepresentation of that amount, but by Columbia Data Product's failure to repay the loan allegedly extended on the basis of the financial statements prepared by Deloitte. This injury occurred in the District of Columbia.

The other requirement for assertion of personal jurisdiction under § (a)(4) of the long-arm statute is, as mentioned above, that defendant or his agents have regular business contacts with the District of Columbia. There is no question that defendant meets this standard. Deloitte maintains an office in the District of Columbia, and in fact at least twenty-seven Deloitte partners are listed in the Washington, D.C. office in Deloitte's 1987 "Worldwide Directory." *Memorandum in Opposition to Motion to Dismiss,* Exhibit A. This constitutes "regular doing of business" under

the long-arm statute. *See, e.g., Security National Bank, N.A. v. Tauber,* 347 F.Supp. 511 (D.D.C.1972).

Although it is not necessary that the alleged injury result from defendant's business contacts with the District of Columbia, *see, e.g., Gatewood v. Fiat,* 617 F.2d 820 (D.C.Cir.1980), such a connection strengthens the conclusion that jurisdiction is properly asserted over defendant. Here, plaintiff claims that its decision to fund the Columbia Data Products loan, a decision made and carried out in the District of Columbia, was in part based on meetings held with Deloitte in the District of Columbia. *Plaintiff's Opposition,* at 12; *Complaint* at ¶¶ 13–14. Although the relation between those meetings and the loan on which Columbia defaulted is, on this record, speculative, the Court must find that the allegation of a relationship between these meetings and the loan approval offers additional support for the assertion of personal jurisdiction over defendant.

█ Even though the long-arm statute gives the Court jurisdiction over defendant Mallery, this Court can assert that jurisdiction only if exercise of jurisdiction is consonant with the demands of the Due Process Clause.[3] Defendant argues that due process forbids exercise of jurisdiction over defendant Mallery. The Court disagrees.

For one, Mallery was a partner in the Washington office of Deloitte, Haskins & Sells at the time that he or his agents allegedly committed the alleged tort. *Mallery affidavit,* ¶ 4. He is now managing partner of Deloitte's Baltimore office. *Id.* at ¶ 1. Thus, he cannot find it altogether unexpected to be the named defendant in a suit arising from Deloitte's actions in the District of Columbia and in Maryland.

There are other compelling reasons to reject Mallery's due process argument as well. As a partner, Mallery is, as a matter of law, jointly and severally liable for any wrongs committed by his partners or their agents and could be haled into a District of Columbia court to redress any such wrongs that occurred here. *See* D.C.Code § 41–114(a). Moreover, he or his agents participated in business meetings in the District of Columbia that allegedly led to plaintiff's decision to lend money to Columbia Data Products. These facts—maintenance of an office in the District of Columbia, conduct of business in the District of Columbia, and conduct of business, personally or through an agent, with plaintiff in the District of Columbia—establish that the Court may exercise jurisdiction over defendant Mallery consistent with traditional notions of substantial justice and fair play. *See, e.g., Helicopteros Nacionales de Columbia, S.A. v. Hall,* 466 U.S. 408, 416, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984); *Perkins v. Benguet Consolidated Mining Co.,* 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952).

█ Defendant also argues that due process forbids choosing Mallery as the representative of the defendant class. This argument is untenable. As Mallery is a proper party defendant, he suffers no additional burden if he is the class representative. Whatever liability defendants may face, they face as a class, and the named representative need bear no more, and no less, of that liability than any other class member. *See, e.g., Moore v. National Association of Securities Dealers,* 762 F.2d 1093 (D.C.Cir.1985); *see also, Federal Practice and Procedure:* Civil at § 1768, 1770.

---

3. It must be pointed out that this due process inquiry is somewhat different from the question whether the long-arm statute is coextensive with the due process clause. The latter is a matter of the breadth of interpretation that District of Columbia Courts have given the D.C. long-arm statute. *Compare, e.g., Stabilisierungsfonds Fur Wein v. Kaiser Stuhl Wine Distributors Pty. Ltd.,* 647 F.2d 200, 204 n. 10 (D.C.Cir.1981) ("transacting business" provision of long-arm statute coextensive with due process clause) *and Mouzavires v. Baxter,* 434 A.2d 988, 991–92 (D.C.1981), *cert. denied,* 455 U.S. 1006, 102 S.Ct. 1643, 71 L.Ed.2d 875 (1982) (refusing to decide if other provisions of long-arm statute are co-extensive with due process clause). Rather, this inquiry examines whether, regardless of the contact between the act, the injury, and the forum state, it is consonant with "traditional notions of substantial justice and fair play" to bring the particular defendant into the particular forum. *See, e.g., Asahi Metal Industry Co., Ltd. v. Superior Court,* —— U.S. ——, 107 S.Ct. 1026, 1033, 94 L.Ed.2d 92, *quoting International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).

Another aspect of defendant's due process argument centers on Mallery's alleged inability to represent his partners fairly and adequately in this suit. Whether Mallery is an adequate class representative is not now an issue before the Court; that is a matter for consideration in connection with the motion for class certification, a motion that the parties stipulated should not come before the Court until the jurisdictional motions were resolved. See *Stipulation*, June 4, 1987. The Court will not breach its Order approving the stipulation and decide that matter now.[4]

Thus, the Court must conclude that defendant Mallery comes within the scope of the District of Columbia long-arm statute and there is no constitutional impediment to exercise of jurisdiction over him. Accordingly, the Court will deny defendant Mallery's motion to dismiss for lack of personal jurisdiction over the defendant.

### DEFENDANT HAS NOT SHOWN FACTS THAT JUSTIFY DISTURBING PLAINTIFF'S CHOICE OF FORUM.

Finally, defendant has asked the Court to transfer this action to the United States District Court for the District of Maryland. He has made this motion pursuant to 28 U.S.C. § 1404(a), which provides

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

Defendant, who must demonstrate the wisdom of a change of venue, bears a heavy burden, as "the plaintiff's choice of forum is due substantial deference and, unless the balance of convenience is strongly in favor of the defendants, should rarely be disturbed." *International Brotherhood of Painters and Allied Trades Union v. Best Painting and Sandblasting Co., Inc.*, 621 F.Supp. 906, 907 (D.D.C. 1985). On the basis of the record before

the Court, defendant has not met that burden.

■ Defendant argues for transfer first on the ground that this case is fundamentally related to *Guthertz v. Diaz*, Civil Action Nos. R–84–4175 and R–84–4515, a suit that is pending in the United States District Court for the District of Maryland. Although pendency of a related case in the other forum is one factor that a Court should consider, existence of a related case elsewhere does not weigh in favor of transfer "if there is no realistic possibility of consolidating the present case with the related case." *Federal Practice and Procedure:* Jurisdiction § 3854. On the record before the Court, the Court cannot conclude that consolidation is a "realistic possibility."

The Court bases this judgment on several reasons. First, neither plaintiff nor defendant is a party to the Maryland action. *Guthertz v. Diaz*, Civil Action Nos. R–84–4175 and R–84–4515 (D.Md.), *attached to Defendant's Motion to Transfer* as Exhibit B. In addition, the Maryland action only raises claims stemming from alleged violations of federal securities laws in connection with a public offering of Columbia Data Products Stock, *id.*; the case before this Court only raises common law claims that are, for the most part, factually unrelated to the alleged securities law violations. Finally, the Maryland case was filed in February, 1985, defendant maintains that "substantial" discovery has been had in that case, and the Court must assume that it will soon be ready for trial. Thus, the Court cannot assume that there is a realistic possibility this relatively recent action, if transferred, would be consolidated with the mature *Guthertz* case. *See, e.g., Combs v. Adkins & Adkins Coal Co., Inc.*, 597 F.Supp. 122, 125 (D.D.C.1984); *Federal Practice and Procedure:* Jurisdiction § 3854.

■ As a second ground to support his motion to transfer, defendant alleges that

---

**4.** Although defendant's papers do not hint at this, it is possible that defendant's real objection to serving as class representative is that he does not wish to contest the suit. Whether this be so

or not, it would be a matter for consideration not now but in conjunction with the motion for class certification. *See, e.g., Hansberry v. Lee*, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 (1940).

Maryland law would apply to this action and thus the suit would best proceed in a Maryland court. While the Court recognizes that transfer to a "forum that is at home with the state law that must govern the case" is often appropriate, *Van Dusen v. Barrack*, 376 U.S. 612, 645, 84 S.Ct. 805, 824, 11 L.Ed.2d 945 (1964), the Court does not believe that Maryland law would apply to this action.

Whether District of Columbia or Maryland law would apply to this suit is determined by applying the choice of law rules of the District of Columbia, the forum jurisdiction of this suit. *See, e.g., Klaxon v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 496–97, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941); *Nepera Chemical, Inc. v. Sea-Land Service*, 794 F.2d 688, 695 (D.C.Cir.1986).[5] District of Columbia law employs an "interests analysis" to choose the law applicable to a tort case. *See, e.g., Semler v. Psychiatric Institute of Washington, D.C., Inc.*, 575 F.2d 922, 924 (D.C. Cir.1978). Simply put, a Court must evaluate and balance the interests of jurisdictions that have some stake in the litigation and select the law of the jurisdiction that bears "the most significant relationship to the tortious occurrence and the litigants." *Nepera Chemical, Inc. v. Sea-Land Service*, 794 F.2d at 695; *see also, Estrada v. Potomac Electric Power Company*, 488 A.2d 1359, 1361 & n. 2 (D.C.1985).

As a benchmark for this inquiry, District of Columbia law looks to the criteria set forth in Section 145(2) of the *Restatement (Second) of Conflicts of Laws. See, e.g., id; see also, Keene Corp. v. Insurance Co. of North America*, 597 F.Supp. 934, 938 (D.D.C.1984). These factors are:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicile, residence, place of incorporation, and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

*Restatement (Second) of Conflicts of Laws,* § 145(2) (1971).

The injury alleged in this case, Columbia Data Product's failure to repay the promissory note, occurred in the District of Columbia, where repayment was to occur. *See Complaint* at Exhibit 2 (Master Promissory Note). Although it seems that the allegedly misleading financial report was prepared in Maryland, *see id.* at Exhibit A, plaintiff's alleged reliance on that report allegedly occurred in the District of Columbia. *Id.* at ¶¶ 19–20; *Plaintiff's Opposition to Motion to Dismiss or Transfer*, at 23. Plaintiff is a national banking association with its principal place of business in the District of Columbia. *Id.* at ¶ 2; *Motion Seeking Relief from Automatic Stay for Suit Against Deloitte, Haskins & Sells*, at 1, *attached to Motion to Dismiss or Transfer.* Defendant may be a Maryland resident or domiciliary, *see Mallery Affidavit* at § 3, but as a representative of a class with members in thirty-nine states, the District of Columbia, and Puerto Rico he cannot be claimed to represent the interests of Maryland alone. Finally, the meetings between the parties allegedly occurred in the District of Columbia. Complaint at ¶¶ 13–14.

Thus, it appears that, on the basis of the record before the Court, Maryland's admitted interest in the proper conduct of business by a partnership operating within its borders (as well as elsewhere) do not override the District of Columbia's great interest in ensuring redress of wrongs committed within the District of Columbia, as a result of a relationship centered within the District of Columbia, that have financially harmed a District of Columbia corporation.

---

**5.** The parties' submissions do not even hint at what the conflict between the relevant District of Columbia and Maryland laws might be. Thus, it is possible that this is a "false conflict" situation, *see, e.g., Gaither v. Myers,* 404 F.2d 216 (D.C.Cir.1968), and the choice of law question largely irrelevant to the question of venue.

Because the Court finds that District of Columbia law would apply to this case whether the conflict is genuine or spurious, the Court will not at this time indulge in an extensive comparison of the substantive law on misrepresentation as it exists in Maryland and the District of Columbia.

In short, the District of Columbia has the most significant interest in having its law applied, and the Court will, without prejudice, find that District of Columbia law will apply to this suit. Accordingly, it cannot find that choice-of-law concerns support transfer of this case to the United States District Court for the District of Maryland.

■ As additional grounds favoring transfer, defendant points out that most of the records that will form the likely source of discovery requests are in Columbia, Maryland, as is Columbia Data Products, which is now under the protection of the Maryland bankruptcy court. Ease of access to records is certainly one factor that the Court must consider when weighing a change of venue, *see Hodgdon v. Needham-Skyles Oil Co.*, 556 F.Supp. 75, 79 (D.D.C.1982), but the Court cannot find that Columbia, Maryland, is necessarily more accessible to litigants in Baltimore than to those in the District of Columbia. Moreover, the fact that Columbia Data Products is currently under the protection of the Maryland Bankruptcy Court is largely, if not totally, irrelevant to a suit in which that corporation is not a party.

Accordingly, the Court must find that defendant has not carried its burden to adduce facts supporting a change in plaintiff's choice of venue. The Court realizes, however, that discovery may reveal that this suit would more appropriately and conveniently proceed in another forum. Defendant's motion to transfer this action to the United States District Court for the District of Maryland will, therefore, be denied, without prejudice to renewal if in the future defendant believes it can provide new and compelling support for transfer of this action.

## CONCLUSION

The Court today will deny defendant's motion to dismiss or transfer this action, without prejudice to a future showing by defendant that subject matter jurisdiction is lacking. As a result of this decision, defendant's motion to stay discovery pending the Court's decision on the motion to transfer is moot. The Court will issue an Order, of even date herewith, memorializing these findings. The Court notes that plaintiff has recently filed a motion to extend the time available to the parties for discovery. The Court will decide that motion once the time allotted by Local Rule 108 for response and reply has expired.

## ORDER

In accordance with the Opinion in the above-captioned case, issued of even date herewith, and for the reasons set forth therein, it is this 2nd day of September, 1987,

ORDERED that defendant's motion to dismiss this case for lack of subject matter jurisdiction shall be, and hereby is, denied, without prejudice to renewal if the Court denies plaintiff's motion for class certification and one of two circumstances arises: (1) plaintiff nonetheless tries to name non-diverse Deloitte partners as defendants, or (2) defendant can show either that all Deloitte partners must be named as defendants or that some non-diverse Deloitte partners must be named as defendants; and it is

FURTHER ORDERED that defendant's motion to dismiss this case for lack of personal jurisdiction over defendant Mallery shall be, and hereby is, denied; and it is

FURTHER ORDERED that defendant's motion to transfer this action to the United States District Court for the District of Maryland shall be, and hereby is, denied, without prejudice; and it is

FURTHER ORDERED that defendant's motion to stay discovery shall be, and hereby is, dismissed as moot.