**NORTHBROOK EXCESS AND SURPLUS INSURANCE COMPANY, Plaintiff, Appellant,**

v.

**The MEDICAL MALPRACTICE JOINT UNDERWRITING ASSOCIATION OF MASSACHUSETTS, Defendant, Appellee.**

No. 89–1932.

United States Court of Appeals, First Circuit.

Heard Feb. 7, 1990.

Decided April 11, 1990.

Richard J. Riley, with whom Murphy, Demarco and O'Neill, P.C., Boston, Mass., was on brief for appellant.

Michael T. Gass, with whom Steven L. Schreckinger and Palmer and Dodge, Boston, Mass., were on brief for appellee.

Before TORRUELLA and SELYA, Circuit Judges, and BOWNES, Senior Circuit Judge.

BOWNES, Senior Circuit Judge.

Northbrook Excess and Surplus Insurance Company, plaintiff-appellant, is an Illinois corporation. Defendant-appellee, the Medical Malpractice Joint Underwriting Association (JUA), is an unincorporated association created by the Massachusetts Legislature.[1] Northbrook prevailed in a suit for

---

**3.** We find it unnecessary to reach the government's argument based on Local Rule 18.

**1.** The JUA was established to provide malpractice insurance to health care professionals un-

able to obtain coverage in the private market. It comprises all insurers writing personal injury liability insurance in Massachusetts. Continued membership is a condition of transacting such business within the commonwealth. *See* the

declaratory judgment it had brought in federal district court. The court found that two doctors against whom malpractice actions had been brought were covered under their prior JUA insurance policies and not their present Northbrook policies. Having won a judgment on the merits, Northbrook now finds itself the appellant in a late-blooming jurisdictional dispute turning on the interpretation of Rule 23.2 of the Federal Rules of Civil Procedure.[2]

Jurisdiction over Northbrook's declaratory judgment action was premised upon diversity of citizenship. After the United States District Court for the District of Massachusetts entered a judgment on the merits for Northbrook, and while appeal to this court was pending, the JUA challenged the district court's jurisdiction for lack of complete diversity. The JUA correctly pointed out that the citizenship of each of the members of an unincorporated association must be considered for diversity purposes in federal court and that at least one member of the JUA is a citizen of Illinois, as is Northbrook.

In order to surmount this hurdle, Northbrook sought leave to amend its complaint by naming one of the members of the JUA, a non-Illinois citizen, as representative of the association's members as a class pursuant to Rule 23.2. We remanded to the district court for consideration of the jurisdictional question. *Northbrook Excess and Surplus Insurance Co., v. Medical Malpractice Joint Underwriting Ass'n of Massachusetts*, No. 88–1669 (1st Cir. Mar. 23, 1989) (reference in table at 873 F.2d 1434). The district court held that (1) a representative suit under Rule 23.2 cannot be brought against an entity that has jural status under state law, and (2) the JUA is a jural entity under Massachusetts law. The

court therefore denied Northbrook's motion to amend its complaint and dismissed the suit for want of subject matter jurisdiction. *Northbrook Excess and Surplus Insurance Co. v. Medical Malpractice Joint Underwriting Ass'n*, 128 F.R.D. 10 (D.Mass. 1989). Northbrook appealed.

## I. DISCUSSION

Rule 23.2 of the Federal Rules of Civil Procedure reads in pertinent part:

> An action brought by or against the members of an unincorporated association as a class by naming certain members as representative parties may be maintained only if it appears that the representative parties will fairly and adequately protect the interests of the association and its members. . . .

The purpose of the rule is explained by the Advisory Committee Note immediately following it:

> Although an action by or against representatives of the membership of an unincorporated association has often been viewed as a class action, the real or main purpose of this characterization has been to give "entity treatment" to the association when for formal reasons it cannot sue or be sued as a jural person under Rule 17(b).

Under Rule 17(b), the capacity of an unincorporated association to sue or be sued is determined by the law of the state in which the district court is held.[3] "Although the Advisory Committee's comments do not foreclose judicial consideration of the Rule's validity and meaning, the construction given by the Committee is 'of weight.' " *Schiavone v. Fortune*, 477 U.S. 21, 31, 106 S.Ct. 2379, 2385, 91 L.Ed.2d 18 (1986) (quoting *Mississippi Publishing Corp. v. Murphree*, 326 U.S. 438, 444, 66

---

Association's Enabling Act, Mass.St.1975, c. 362, § 6, as amended by Mass.St.1988, c. 333 and Mass.St.1986, c. 351, § 33.

**2.** Rule 23.2 allows an action to be brought, under certain conditions, by or against the members of an unincorporated association as a class by naming certain members as representative parties.

**3.** Rule 17(b) reads in pertinent part:

. . . . In all other cases capacity to sue or be sued shall be determined by the law of the state in which the district court is held, except (1) that a partnership or other unincorporated association, which has no such capacity by the law of such state, may sue or be sued in its common name for the purpose of enforcing against it a substantive right existing under the Constitution or laws of the United States. . . .

S.Ct. 242, 246, 90 L.Ed. 185 (1946).) Thus, Rule 23.2 provides a mechanism by which an association may sue or be sued through a representative where state law prevents the association from doing so in its own name.

Northbrook argues that in addition to providing "entity treatment," Rule 23.2 permits a representative suit to be maintained in order to achieve diversity for the purpose of establishing federal subject matter jurisdiction. It asserts that under Rule 23.2's plain language, the only limitation on its availability is that the representative fairly and adequately protect the interests of the association and its members. Therefore, even where state law allows an association to be sued in its own name, a representative suit is a permissible alternative. Northbrook further contends that the district court erred in holding that the JUA is a jural entity under Massachusetts law. Thus, regardless of whether Rule 23.2 is applicable to associations with state recognized jural status, Northbrook maintains that the rule may be applied to the JUA.

For the reasons discussed below, we reject both of these contentions.

### A. Availability of Rule 23.2

■ We think a restrictive application of Rule 23.2 is necessary for three reasons. First, the logical implication of the Advisory Committee Note is that the rule may not be used merely to create diversity jurisdiction. As the district court reasoned, the note states in plain English that the rule's purpose is to give entity treatment to unincorporated associations where state law does not permit them to sue or be sued. It follows that where an association does have the capacity under state law to sue or be sued as an entity, Rule 23.2 is unnecessary and may not be invoked.

Second, federal court jurisdiction is strictly limited by statute to cases meeting specific criteria. 28 U.S.C. §§ 1330–1366. A party that does not meet those criteria cannot manufacture diversity in order to gain access to the federal courts. "Pleas for extension of the diversity jurisdiction to hitherto uncovered broad categories of liti-gants ought to be made to Congress and not to the courts." *United Steelworkers of America, AFL–CIO v. R.H. Bouligny, Inc.,* 382 U.S. 145, 150–151, 86 S.Ct. 272, 275, 15 L.Ed.2d 217 (1965).

Third, most courts that have examined the scope of Rule 23.2's availability have concluded that where an association has jural status under state law, the rule does not come into play. *See Patrician Towers Owners, Inc. v. Fairchild,* 513 F.2d 216, 220 (4th Cir.1975); *National Bank of Washington v. Mallery,* 669 F.Supp. 22 (D.D.C.1987); *Lang v. Windsor Mount Joy Mutual Insurance Co.,* 493 F.Supp. 97 (E.D.Pa.1980); *Gay Liberation v. University of Missouri,* 416 F.Supp. 1350 (D.C. Mo.1976), *rev'd on other grounds,* 558 F.2d 848 (8th Cir.1977); *Lee v. Navarro Savings Ass'n,* 416 F.Supp. 1186 (N.D.Tex.1976), *rev'd on other grounds,* 597 F.2d 421 (5th Cir.1979), *aff'd* 446 U.S. 458, 100 S.Ct. 1779, 64 L.Ed.2d 425 (1980); *Suchem, Inc. v. Central Aguirre Sugar Co.,* 52 F.R.D. 348 (D.P.R.1971).

In *Suchem,* as here, the plaintiff sought to convert its action against an unincorporated association into one under Rule 23.2 when it became apparent that diversity jurisdiction against the association was lacking. The court denied the plaintiff's motion to amend its complaint, holding that

[when] the law of the state in a particular case does not provide an unincorporated association with capacity as a jural person to sue or be sued, then and *only* then does the mechanism of Rule 23.2 come into operation....

*Id.* at 355 (emphasis in original). *See also Patrician Towers,* 513 F.2d at 220 (reversing a finding that plaintiffs could proceed under Rule 23.2 and observing that the *Suchem* analysis finds strong support in the Advisory Committee Note).

We have considered the cases cited by Northbrook and are not persuaded by them to adopt a broader reading of the rule. In *Kerney v. Fort Griffin Fandangle Ass'n, Inc.,* 624 F.2d 717 (5th Cir.1980), the court permitted a Rule 23.2 representative suit even though the association had jural status under state law. It did so because

under state law inclusion of individual members as defendants increased the assets available to satisfy a judgment. 624 F.2d at 720. There were no allegations that the plaintiff was seeking to employ Rule 23.2 merely to manufacture diversity jurisdiction. The court expressly declined to decide whether the rule is available when the plaintiff has "elected to bring a class action rather than an entity suit only in order to select diverse parties as named class representatives and thereby create jurisdiction and not in order to obtain different relief." *Id.* at 720–721, n. 6.

In *Lumbermen's Underwriting Alliance v. Mobil Oil Corp.*, 612 F.Supp. 1166 (D.Idaho 1985), the court denied a motion for class certification by the individual members of an unincorporated association because under state statute the association could only sue and be sued in its own name. The court held, however, that Rule 23.2 permitted individual members of an unincorporated association to maintain suit as a class where state law did not prevent them from doing so. Although the *Lumbermen's Underwriting* court carefully traced the development of class actions involving unincorporated associations, we think its conclusion as to Rule 23.2's availability was in error. It reasoned that because the Advisory Committee Note's reference to entity treatment did not specifically refer to an unincorporated association's capacity to sue or be sued, "entity treatment" can be achieved either "by suing the entity in its common name *or* by suing the members of the association individually as a class." 612 F.Supp. at 1170 (emphasis in original). We think this conclusion was flawed for the same reason articulated by Judge Young in denying Northbrook's motion to amend:

> [S]uch a reading ignores the purpose of the Rule, expressly stated, which is merely to confer upon an unincorporated association entity treatment "when for formal reasons it cannot sue or be sued

as a jural person under Rule 17(b)." Fed.R.Civ.P. 23.2, Advisory Committee Note. Significantly, the Note does not add to this stated purpose, "[or] to avoid the practical difficulties of joining all members of the association."

*Northbrook*, 128 F.R.D. 10 at 12.

Nor does our decision in *Oskoian v. Canuel*, 269 F.2d 311 (1st Cir.1959), dictate a different interpretation of the availability of Rule 23.2, as Northbrook argues it does. In *Oskoian*, we permitted a suit to be maintained against a labor union by naming certain officers as representatives of the union's members as a class, even though Rhode Island law provided that suits against unincorporated associations could only proceed by naming all members of the association, or specified officers whom the plaintiffs had not named. *Id.* at 314–315. *Oskoian*, however, pre-dated Rule 23.2 and therefore did not address the issue of whether the rule may be used to create diversity jurisdiction or used solely to give entity treatment to an unincorporated association that has no such status under state law.[4]

Finally, Northbrook cites *Lefebre v. Kelly*, No. CV 3211(ERK) (E.D.N.Y. May 21, 1987), 1987 W.L. 12036. Because the court in that case relied on *Kerney* and *Oskoian*, we do not discuss it further.

We hold that the availability of Rule 23.2 turns, *inter alia*, on the unincorporated association's capacity to sue and be sued as a jural entity under state law. If the JUA can institute or defend a suit in its common name under Massachusetts law, Northbrook may not use Rule 23.2 to bring a class action against its members in federal court.

### B. Status of the JUA Under Massachusetts Law

■ The district court ruled that the Massachusetts Supreme Judicial Court would extend its holding in *Diluzio v.*

---

**4.** We are aware that 7C C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure; Civil 2d* § 1861, p. 223 (1986) cites *Oskoian* and states that the Advisory Committee Note supports "the view that Rule 23.2 is a procedural device that

provides a supplementary method for unincorporated associations to litigate in federal court." The commentators concede, however, that "the clear trend in cases decided since the adoption of Rule 23.2" goes the other way.

United Electrical, Radio and Machine Workers of America, Local 274, 386 Mass. 314, 435 N.E.2d 1027 (1982), to confer jural status upon the JUA. In that case, the Massachusetts court held that labor unions are legal entities, overturning the common law rule that unincorporated associations lack the capacity to sue or be sued. 435 N.E.2d 1027 at 1029. The court reasoned that the rationale behind the old rule—that an unincorporated association was simply an aggregation of individuals engaged in a joint enterprise—was not applicable to many modern entities, which can be large, highly organized institutions with great powers and responsibilities. *Id.* at 1029–1030.

Even though the *Diluzio* holding was limited "to labor unions only, leaving to future development the rules to be applied in cases involving other types of unincorporated voluntary associations," *id.* at 1031, n. 6, we think that the court's rationale is applicable in this case. As an involuntary association created by legislative mandate, the JUA differs significantly from the "aggregations of individuals pursuing a common purpose" contemplated by the old common law rule. *Id.* at 1030. It is a non-profit underwriting association which issues policies in its own name and divides fixed profits among its members according to an established formula. Its existence is not dependent on the life of any member but is at the prerogative of the legislature. It engages in general malpractice underwriting work which "represents organized, institutional activity as contrasted with wholly individual activity." *Id.* at 1029. The JUA, like the labor union under consideration in *Diluzio*, shares many of the institutional characteristics of incorporated entities which have jural status.

Moreover, the Massachusetts Supreme Judicial Court has itself entertained suits by and against the JUA without questioning the association's jural capacity. *See Pinheiro v. Medical Malpractice Joint Underwriting Ass'n*, 406 Mass. 288, 547 N.E.2d 49 (1989); *Massachusetts Medical Soc'y v. Commissioner of Ins.*, 404 Mass. 720, 537 N.E.2d 116 (1989) (JUA was plaintiff-intervenor); *Massachusetts Medical Soc'y v. Commissioner of Ins.*, 402 Mass. 44, 520 N.E.2d 1288 (1988) (separate JUA complaint consolidated with that of named plaintiff); *Medical Malpractice Joint Underwriting Ass'n v. Commissioner of Ins.*, 395 Mass. 43, 478 N.E.2d 936 (1985). The existence of these cases strongly supports the JUA's argument that it has the capacity under Massachusetts law to sue and be sued as an entity.

We, therefore, agree with the district court's conclusion that the JUA has jural status. *See Moores v. Greenberg*, 834 F.2d 1105, 1107 (1st Cir.1987) (it is the duty of the federal district court to determine how the state's highest tribunal would rule on issues of state law, and in doing so it "may reasonably assume that [the state court] will follow the rule that appears best to effectuate relevant policies") (citation omitted); *Kassel v. Gannett Co., Inc.*, 875 F.2d 935, 950 (1st Cir.1989) ("when state law has been authoritatively declared, the federal tribunal should apply that law according to its tenor").

## II. CONCLUSION

█ We hold that because the JUA may be sued as an entity under Massachusetts law, Northbrook may not name one member of the association to represent the other members and the association as a class in order to establish diversity jurisdiction. The order of the district court denying plaintiff's motion to amend its complaint and dismissing the action for lack of subject matter jurisdiction is

AFFIRMED.

Costs on appeal awarded to the JUA.