MASSACHUSETTS MEDICAL SOCIETY & another[1] *vs.*
COMMISSIONER OF INSURANCE.

Suffolk.   January 5, 1989. — April 24, 1989.

Present: LIACOS, ABRAMS, NOLAN & LYNCH, JJ.

*Insurance*, Commissioner of Insurance, Medical malpractice insurance.

For purposes of establishing, pursuant to St. 1986, c. 351, § 38 (3), (4), as
   amended, the "individual deferred premium liability" of certain physi-
   cians who terminate their medical malpractice insurance coverage, the
   credit for the amount of "total deferred premium liability" recovered
   from them is to include any sums paid which represent the payment of
   subsidies, such as those for exemptions and uncollectible liabilities.
   [723-724]

CIVIL ACTION commenced in the Supreme Judicial Court
for the county of Suffolk on June 14, 1988.

The case was reported by *Nolan, J.*

*Kevin A. Griffin* for the plaintiff.

*Richard M. Brunell*, Assistant Attorney General, for the
Commissioner of Insurance.

*Michael J. Lacek*, for the intervener, was present but did
not argue.

LIACOS, J.  We review, on reservation and report by a single
justice of this court, the challenge of the Massachusetts Medical
Society (Society) to a decision of the Commissioner of Insur-
ance (Commissioner). In that decision, the Commissioner ap-
proved, in part, a hearing officer's decision regarding the cal-
culation and collection of deferred premium liability on physi-
cians' medical malpractice insurance for the 1988-1989 rate

---

[1] Another single justice allowed a motion to intervene by the Medical
Malpractice Joint Underwriting Association of Massachusetts.

year.[2] G. L. c. 175A, § 5A (1986 ed. & 1987 Supp.). We decide that the Commissioner erred. He determined that in calculating the total deferred premium liability (TDPL), which has been recovered from certain physicians who terminate their coverage, the Medical Malpractice Joint Underwriting Association of Massachusetts (JUA) should not credit to such physicians, as part of their individual deferred premium liability (IDPL), amounts paid which represent the payment of subsidies such as those for exemptions and uncollectible liabilities (bad debt). St. 1986, c. 351, § 38 (3) and (4), as amended by St. 1987, c. 69 and c. 169. We reverse the pertinent portion of the decision and remand the case.

1. *Statutory background.* The deferred premium liability statute was enacted after protracted controversy concerning JUA medical malpractice premiums for the rate years 1983 through 1985. On May 18, 1984, the Commissioner issued a decision ordering a 42% average increase in the rates for physicians for the period beginning July 1, 1983. *Medical Malpractice Joint Underwriting Ass'n.* v. *Commissioner of Ins.*, 395 Mass. 43, 44 (1985). We determined that the Commissioner had misinterpreted the applicable statutes and had reached a decision not supported by substantial evidence in the record. We reversed and remanded the case. *Id.* at 45. Shortly before the Commissioner issued his decision on remand, St. 1985, c. 671, was enacted, freezing medical malpractice premium rates for policies issued after July 1, 1984, at the levels set in the Commissioner's May 18, 1984, decision. See *Massachusetts Medical Soc'y* v. *Commissioner of Ins.*, 402 Mass. 44, 52 (1988). The freeze was made effective until May 1, 1986, and was later extended to July 1, 1986. *Id.* The JUA was prohibited from collecting premium increases during the years affected by that freeze. *Id.* at 52-53. The parties agree that physicians insured by the JUA paid interim premiums on their 1983, 1984, and 1985 policies which were "substantially less" than the premiums ultimately established for the policies.

---

[2] The single justice stayed until further order all proceedings in the case involving the May 23, 1988, experience rating decision and certain related decisions, and reserved and reported the remainder without decision.

The TDPL is defined as "the difference between the amount of premium charges payable with respect to 'all policies' issued between July 1, 1983, and July 1, 1986, and the amount of premium charges payable on these policies as established by the 1984 decision of the Commissioner." *Id.* at 51. The mechanism through which the JUA is to recover the TDPL was established in St. 1986, c. 351, § 38, which provides for deferral of the amount due until July 1, 1987, and for the payment of predetermined portions of the total annually over a five-year period. *Id.* at 49. The statute also specifies that any physician covered by a JUA policy on or after July 1, 1983, and before July 1, 1986, who ceases to be insured by the JUA or ceases to practice in the Commonwealth (unless cessation is caused by death, by retirement due to disability or after having attained age sixty-five, or by relocation outside the Commonwealth immediately upon completion of a residency or internship) shall be liable for the accrued IDPL. St. 1986, c. 351, § 38 (4), as amended by St. 1987, c. 69. However, if the cessation occurs after July 1, 1987, the IDPL is to be reduced by the amount of TDPL recovered from the physician pursuant to § 38 (3). St. 1986, c. 351, § 38 (4), as amended by St. 1987, c. 69.

Before turning our attention to the calculation of this credit, the issue on which we reverse the Commissioner, we also note that the statute specifies that, in recovering the TDPL, the Commissioner is annually to determine the portion of TDPL "*then outstanding* which is attributable to each risk classification of premium charges"; he is to attribute to each classification that portion of TDPL "*then outstanding*" which accrued with respect to policies issued between July 1, 1983, and July 1, 1986; and, he is to deduct from the portion of TDPL "*then outstanding*" any amounts of IDPL "which have been recovered pursuant to [§ 38 (4)]" (emphasis added). St. 1986, c. 351, § 38 (3). As to JUA policies issued between July 1, 1987, and July 1, 1992, the Commissioner is to establish a rate for each classification which shall permit recovery of specified amounts (proportional payments), plus interest, of the TDPL outstanding. St. 1986, c. 351, § 38 (3). The Commissioner points out

that the rate must account for the shortfall in the recovery of TDPL due to bad debt and the exemption of certain physicians from the IDPL system, so that those who pay (proportional) deferred premium liability subsidize those who pay less than their accrued IDPL.

2. *Calculating the credit.* We noted above that the IDPL of certain physicians who cease to practice in the Commonwealth or to maintain coverage with JUA shall be reduced by the amount of TDPL recovered from them pursuant to § 38 (3). St. 1986, c. 351, § 38 (4), as amended by St. 1987, c. 69. The Society argues that the existence and amount of the credit toward IDPL are established in unambiguous statutory language, and that the Commissioner does not have discretion to adjust the amount. The Commissioner contends that the credit is the TDPL recovered which is attributed to the retirement of a physician's own accrued liability. Thus, he excluded subsidies from the credit. We conclude, for the reasons set forth below, that the Commissioner erred.

The IDPL is to be reduced, according to § 38 (4), by the amount of TDPL recovered pursuant to § 38 (3). The Commissioner focuses on the term "total deferred premium liability *outstanding*" in § 38 (3) and argues that it is different in kind from TDPL; that it is independent of each physician's accrued liability; that it declines with each year's collections; and that it reflects amounts not collected from physicians who are exempt or who default. He states that TDPL is simply the sum of each physician's IDPL.

We, however, read § 38 (3) differently. In describing how the TDPL shall be recovered, it specifies that the Commissioner shall annually determine the *portion* of the TDPL *then outstanding* which is attributable to each risk classification. We read this as referring to the segment of the TDPL which has not been paid; and interpret the reference to the *portion* of TDPL then outstanding as indicating that what has not been paid is a part of a whole, the TDPL. The term "then outstanding" distinguishes the amount not yet paid from the total (TDPL) which is defined in § 38 (1). (See part 1 of the opinion.) Our view is reinforced by consideration of the purpose of § 38 (3).

It specifies how the TDPL is to be recovered. Of less significance is the fact that TDPL "then outstanding" is not defined in § 38 (1), as are TDPL and IDPL. We decide, therefore, that the Commissioner erred in determining that the credit under § 38 (4) for the amount of TDPL recovered pursuant to § 38 (3) should not include amounts representing subsidies.[3]

We acknowledge the Commissioner's arguments that the Society's interpretation might undermine the system and leave the JUA unable to collect some of the deferred liability, and that it is appropriate to adjust the IDPL credit now, "before the potential problem of departing physicians becomes acute." We also note that the hearing officer stated that the need to adjust the credits "is created by the inevitable collapse of the DPL system in its last years if adjustments are not made (or the statute changed)." Nevertheless, our review is constrained by the clear terms of the statute.[4] The determination whether remedial action is warranted, and its possible form, are matters for the executive and legislative branches.

3. *Conclusion.* Judgment is to be entered in the county court reversing so much of the Commissioner's decision of May 23, 1988, as approved the hearing officer's decision directing the computation of IDPL credits, and remanding the case for further proceedings consistent with this opinion. The order of the single justice staying certain proceedings (see note 2, *supra*) is terminated.

*So ordered.*

---

[3] The Commissioner and the Society agree that the credit does not include any interest collected from a physician pursuant to § 38 (3).

[4] The parties disagree as to whether the Commissioner's findings on the future impact of his rulings are supported by substantial evidence. They agree, however, that, if the Commissioner has no discretion under the statute, we need not reach that issue.