Lawrence F. LEE, Jr., et al.

v.

NAVARRO SAVINGS ASSOCIATION.

No. CA 3–74–1231–C.

United States District Court,
N. D. Texas,
Dallas Division.

July 28, 1976.

James A. Ellis, Jr., Carrington, Coleman, Sloman, Johnson & Blumenthal, Dallas, Tex., for plaintiffs.

Bernus Wm. Fischman, Lackshin, Nathan & Berg, Houston, Tex., Lawrence Fischman, Weil, Craig & Fischman, Inc., Dallas, Tex., William P. Weir, Fort Worth, Tex., for defendant.

## MEMORANDUM OPINION AND ORDER

WILLIAM M. TAYLOR, Jr., Chief Judge.

This suit was brought by the above named plaintiffs as trustees of Fidelity Mortgage Investors (FMI), a Massachusetts business trust, against defendant Navarro Savings Association for damages resulting from the breach of a loan commitment agreement.

Defendant has moved to dismiss the case for want of subject matter jurisdiction, F.R. C.P. 12(b)(1). Plaintiffs have responded by amending their complaint to allege four separate grounds upon which jurisdiction might properly be based. The Court has reviewed each of those grounds, and finds that none is strong enough to repel defendant's jurisdictional attack.

## DIVERSITY OF CITIZENSHIP

Plaintiffs primarily contend, in opposition to defendant's motion to dismiss, that when a real estate investment trust (REIT), such

as FMI, brings suit in federal court, the citizenship of the trustees, not the beneficiaries, is the determinative factor for diversity purposes. Under this view of the law, jurisdiction of this Court would be proper under 28 U.S.C. § 1332(a), since none of the plaintiff trustees are citizens of Texas.

Defendant disputes plaintiffs' contention, citing several recent cases in which other federal district courts have held that for diversity purposes, an REIT is an unincorporated association in which case the citizenship of the beneficiaries is controlling, not the citizenship of the trustees.

*Larwin Mortgage Investors v. Riverdrive Mall, Inc.*, 392 F.Supp. 97 (S.D.Tex.1975) was the first reported case to address this issue. In that case, Judge Cox reviewed the plaintiff's claim that for diversity purposes, an REIT should be treated either as a corporation or as an ordinary trust. If an REIT were a corporation, then citizenship would be determined by looking to the state of incorporation or principal place of business. If a trust, then citizenship of the trustees would be determinative.[1]

Feeling constrained by the United States Supreme Court's opinions in *Steelworkers v. Bouligny, Inc.*, 382 U.S. 145, 86 S.Ct. 272, 15 L.Ed.2d 217 (1965) and *Morrissey v. Commissioner of Internal Revenue*, 296 U.S. 344, 56 S.Ct. 289, 80 L.Ed. 263 (1935), Judge Cox held that for diversity purposes, a business trust which qualified as an REIT under the Internal Revenue Code must be treated as an unincorporated association, making the citizenship of each of the beneficiaries determinative of jurisdiction.[2]

1. Plaintiffs in the case at bar have not contended that FMI should be treated as corporation for diversity purposes; only that it should be treated as a trust.

2. Judge Cox' reliance on *Bouligny* and *Morrissey* was well-placed. The issue before the Court in *Bouligny* was whether a labor union, for diversity purposes, is a citizen of the state of its principal place of business, or a citizen of the state of each of its members. The Court opted for the latter view, suggesting that any expansion of diversity jurisdiction was a matter for the Congress, not the Courts.

Although *Larwin* was the first case to explore the issue of REIT citizenship for diversity purposes, it has not been the last. Other federal district courts have considered the question, and each one has concurred in the *Larwin* result. *See Saul v. Farnale, Inc.*, Civil Action No. 74–H–128 (S.D.Tex., July 8, 1975), and *Risk v. Jones*, Civil Action No. 75–97A (N.D.Ga., June 19, 1975).

■ Against the above authority, plaintiff trustees of FMI have asserted their belief that *Larwin* was incorrectly decided, and have offered several arguments in support of that belief. At the time those arguments were urged by plaintiffs, the issue of REIT citizenship was one of first impression in this Court. That is no longer the case. This Court has subsequently rendered a decision in *Lincoln Associates, Inc. v. Great American Mortgage Investors*, 415 F.Supp. 351 (N.D.Tex.1976), in which it held that the citizenship of an REIT for diversity purposes is governed by the citizenship of each of its beneficiaries. That holding must also apply to the case at bar.

■ The jurisdictional facts in the two cases are virtually identical. Like the defendant REIT in *Lincoln*, FMI is a Massachusetts real estate trust,[3] organized under a Declaration of Trust. FMI is an investment vehicle authorized to issue negotiable shares for public offering.[4] The powers of FMI's trustees are nearly the same as those of the trustees in *Lincoln*, and the powers of the shareholders are equally similar. Given these similarities in fact, similarity in law must logically result.

The Court in *Morrissey* was faced with a determination of the treatment of a business trust for tax purposes. It ultimately concluded that business trusts should be taxed as unincorporated associations rather than as ordinary trusts, reasoning that the object of a business trust is "not to hold and conserve particular property, . . . but to provide a medium for the conduct of a business and sharing its gains."
296 U.S. at 357, 56 S.Ct. at 295.

3. Declaration of Trust, Section 1.3

4. Declaration of Trust, Section 6.1

Most of the arguments asserted by FMI in support of its diversity claim were addressed by this Court in *Lincoln.* First, plaintiffs argue that the *Larwin* court's reliance on *Morrissey* was misplaced because *Morrissey* was a tax case, and the characterization of an entity for tax purposes should not control its characterization for diversity purposes. That argument was dispelled in *Lincoln* :

> The *Morrissey* analysis of types of entities and enterprises is clearly applicable to the case at bar, and dictates [the REIT's] treatment as an unincorporated association. Nothing in that opinion indicates that the Supreme Court would treat a business trust any differently for purposes of determining diversity jurisdiction.

*Supra,* at page 354.

■ Second, plaintiff contends that Congress overruled much of *Morrissey* when it enacted legislation to permit REIT's to escape taxation as associations, under §§ 856–58 of the Internal Revenue Code of 1954. Such an interpretation, however, reads too much into the statute. Congress did not alter *Morrissey's* definition of "business trusts," it merely granted more favorable tax treatment to REIT's. And absent more explicit legislation, this Court will adhere to the *Morrissey* definition. For, as the Supreme Court concluded in *Bouligny,* "pleas for extension of the diversity jurisdiction to hitherto uncovered broad categories of litigants ought to be made to the Congress and not to the Courts." *Supra,* 382 U.S. at 150–51, 86 S.Ct. at 275.

■ Plaintiffs additionally maintain that as trustees of FMI, their powers over the trust are so broad that the citizenship of each of them should control for the purpose of determining diversity jurisdiction. They attempt to buttress this argument with the fact that FMI is now under the supervision of a Bankruptcy Court,[5] which at least temporarily suspends all powers of its shareholders over its trustees.

This latter argument is not valid. Diversity is determined as of the time the action is commenced, *Louisville, N. A. & C. R. Co. v. Louisville Trust Co.,* 174 U.S. 552, 19 S.Ct. 817, 43 L.Ed. 1081 (1899), and the bankruptcy orders upon which plaintiffs rely were not entered until after the case at bar was commenced on December 13, 1974.

As to plaintiffs' main argument that the trustees' powers are so broad as to make their citizenship determinative of jurisdiction, this Court need only commend plaintiffs to *Lincoln* which dealt with trustees' powers of similar scope:

> When one considers the . . . characteristics of [the REIT] in light of the Supreme Court's analysis [in *Morrissey*], it becomes manifestly clear that [the REIT] is not an ordinary trust. It is a business trust or association, and, in view of the mandate to narrowly construe and define diversity jurisdiction, this Court cannot treat it as an ordinary trust for diversity purposes. Rather, it must be treated as an unincorporated association (footnote omitted).

*Supra,* at page 354.

■ Plaintiffs finally suggest that *Larwin* is inapplicable to their case, because FMI is not now qualified as an REIT for tax purposes. The Court responded to this same suggestion in *Lincoln* :

> This argument is without merit. The issue before the Court turns not upon an election by [defendant] under the tax code which results in its being a "real estate trust" rather than a "real estate investment trust," but rather upon the intrinsic nature and purpose of [defendant] as a business enterprise.

*Supra,* at page 354. Although FMI is not officially recognized as an REIT for tax purposes, its "intrinsic nature and purpose" as a business enterprise are such that it cannot be treated as either a corporation or an ordinary trust. Hence the citizenship of its shareholders must be the determinative factor for diversity purposes.

5. See affidavit of Arthur Milam, which contains the bankruptcy court orders.

## CLASS ACTION

▅▅▅ Plaintiffs have alternatively alleged that suit has been properly brought in this Court as a class action under FRCP 23.2. That rule provides that members of an unincorporated association may bring suit as a class by naming certain members as representative parties, provided that those parties "will fairly and adequately protect the interests of the association and its members."

Not coincidentally, every party-plaintiff named as a class representative in the case at bar is a citizen of a state other than Texas. Therefore, plaintiffs contend, the diversity of citizenship requirement has been met.

The Court is not so inclined. Rule 23.2 must be read in conjunction with Rule 17(b), which orders that the capacity of an unincorporated association to sue be determined by the law of the state in which the district court is held. If state law allows the association to sue as an entity, then a class action under Rule 23.2 is not available. *Suchem, Inc. v. Central Aguirre Sugar Co.,* 52 F.R.D. 348 (D.P.R.1971).

Since Texas law allows REIT's to sue and be sued as entities, Tex.Rev.Civ.Stat.Ann. art. 6138A § 6(A)(2) (1961), plaintiffs cannot properly bring this suit as a class action.

## BANKRUPTCY JURISDICTION

▅▅▅ Absent diversity or class action jurisdiction, plaintiffs further contend that § 23(b) of the Bankruptcy Act[6] confers jurisdiction on the Court because 1) a debtor-in-possession occupies the same position as a receiver or trustee, and 2) under the Bankruptcy Act, a defendant, in a suit brought by a receiver or trustee, can consent to jurisdiction where none otherwise would exist.

The Court does not reach the question of whether plaintiff trustees, as debtors-in-possession, occupy the same position as receivers in bankruptcy, because it is clear from the facts that defendant has never consented to jurisdiction in this cause.

A brief review of pertinent facts is in order. Plaintiffs filed their complaint on December 13, 1974, alleging jurisdiction based on diversity of citizenship. On January 10, 1975, defendant answered, and requested a stay of the proceedings. On January 30, 1975, plaintiffs were adjudged debtors-in-possession of FMI. Defendant did not file its motion to dismiss for want of jurisdiction until March 16, 1976, and plaintiffs now claim the delay served to imply consent to jurisdiction.

The Court is not persuaded. The cases cited by plaintiffs that deal with consent involved suits brought by persons in their capacities as receivers or trustees in bankruptcy. The case at bar does not fall into that category.

Plaintiffs should be reminded that defendant's motion to dismiss was filed *before* plaintiffs submitted their first amended complaint, which effectively superseded their original complaint. 3 J. Moore, Federal Practice ¶ 15.08[7] (2d ed. 1975). They should also take note of the well established principle that "[i]t is never too late for a party, or the court on its own motion, to assert lack of jurisdiction over the subject matter." C. Wright, Federal Courts § 69, at 292 (2d ed. 1972).

## FEDERAL QUESTION JURISDICTION

▅▅▅ Plaintiffs' hodge-podge of jurisdictional allegations ends with a claim that their injuries were the result of defendant's violation of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (1970), and its implementing Rule 10b–5, 17 C.F.R. § 240.10b–5 (1975). Plaintiffs have alleged no facts in support of this claim, and perhaps rightly so, since it has absolutely no merit.

Suffice it to say that 1) defendant's commitment letter is not a "security," *see Unit-*

6. Section 23(b) reads as follows: "Suits by the receiver and the trustee shall be brought or prosecuted only in the courts where the bankrupt might have brought or prosecuted them if proceedings under this Act had not been instituted, unless by consent of the defendant, except as provided in sections 60, 67, and 70 of this Act." 11 U.S.C. § 46(b) (1964).

ed Housing Foundation, Inc. v. Forman, 421 U.S. 837, 95 S.Ct. 2051, 44 L.Ed.2d 621 (1975), cf. United States v. Austin, 462 F.2d 724 (10th Cir. 1972), and 2) the Securities Exchange Act of 1934 was never intended to insure American businesses against bad debts. As the Fifth Circuit noted in Bellah v. First National Bank of Hereford:

> We doubt that Congress intended by [this Act] to render federal judges the guardians of all beguiled makers or payees.

495 F.2d 1109 at 1113–14 (5th Cir. 1974).

Having reviewed each of the jurisdictional allegations offered by plaintiffs, the Court is of the opinion that it lacks jurisdiction over the subject matter of this lawsuit. Accordingly, the case must be dismissed.