**Theodore LANG, Jr., also known as Ted Lang, Jr.**

v.

**WINDSOR MOUNT JOY MUTUAL INSURANCE COMPANY et al.**

Civ. A. No. 80–1377.

United States District Court, E. D. Pennsylvania.

June 20, 1980.

Dante Mattioni, Philadelphia, Pa., for plaintiff.

John W. Dry, Peter F. Cianci, Reading, Pa., for defendants.

## MEMORANDUM AND ORDER

TROUTMAN, District Judge.

Determining that plaintiff has invoked federal jurisdiction properly constitutes the *in limine* question which federal courts must consider prior to proceeding to the merits of a claim. *Pacific Intermountain Express Co. v. Hawaii Plastics Corp.*, 528 F.2d 911 (3d Cir. 1976). In the present controversy, resolution of this question requires reference to the capacity of defendant Cloister Relief Association (CRA), an unincorporated association, to be sued as a class under Fed.R.Civ.P. 23.2.[1] The Court dismissed the original action which plaintiff, then a domiciliary of the Commonwealth of Virginia, filed because several members of CRA were citizens thereof as well. *See Lang v. Windsor Mount Joy Mutual Insurance Co.*, 487 F.Supp. 1303 (E.D.Pa. 1980) and *United Steel Workers of America v. R. H. Bouligny, Inc.*, 382 U.S. 145, 86 S.Ct. 272, 15 L.Ed.2d 217 (1965) (for purposes of diversity jurisdiction the citizenship of an unincorporated association is the citizenship of the individual members of the association).[2] Shortly before the dismissal, plaintiff filed another complaint, assigned originally to another judge in this district and later transferred, which not only alleged that plaintiff was a citizen of the District of Columbia but also purported to sue CRA as a class under Fed.R.Civ.P. 23.2. Defendants have now moved to dismiss this complaint as well.

At common law an unincorporated association could neither sue nor be sued. *See United Mine Workers of America v. Coronado Coal Co.*, 259 U.S. 344, 42 S.Ct. 570, 66 L.Ed. 975 (1922). Fed.R.Civ.P. 17(b) modifies this rule to allow an unincorporated association to sue or be sued when a question of federal law or rights is involved.[3]

1. This rule provides that

   [a]n action brought by or against the members of an unincorporated association as a class by naming certain members as representative parties may be maintained only if it appears that the representative parties will fairly and adequately protect the interests of the association and its members   .   .   .

2. *See also Navarro Savings Association v. Lee*, —— U.S. ——, ——, 100 S.Ct. 1779, 1782, 64 L.Ed.2d 425 (1980), in which the court mentioned that unincorporated associations remain mere collections of individuals. When the "persons composing such association" sue in their collective name, they are the parties whose citizenship determines the diversity jurisdiction of a federal court.   .   .

3. Rule 17(b) provides, in pertinent part, that [i]n all other cases capacity to sue or be sued shall be determined by the law of the state in which the district court is held, except (1) that a partnership or other unincorporated association, which has no such capacity by the law of such state, may sue or be sued in

However, where the predicate of federal jurisdiction lies in diversity of citizenship, Rule 17(b) expressly refers the question of an unincorporated association's jural capacity to state law. *See General Heat & Power Co. v. Diversified Mortgage Investors*, 552 F.2d 556 (3d Cir. 1977). Pennsylvania law provides that an unincorporated association may sue and be sued as an entity, Pa.R. Civ.P. 2153(a),[4] but not as a class. *See Plechner v. Widener College, Inc.*, 569 F.2d 1250 (3d Cir. 1977) and *cf. Underwood v. Maloney*, 256 F.2d 334 (3d Cir. 1958) ("[s]ince 1939 the law of Pennsylvania has forbidden a suit by or against an unincorporated association to be maintained as a class action, such suits must be deemed to be brought . . . against the unincorporated association itself"). Notwithstanding, plaintiff contends that Fed.R.Civ.P. 23.2 allows him to sue CRA as a class. The 1966 Committee Notes to this Rule indicate that "the real or main purpose of this characterization" was to give " 'entity treatment' to the association when for formal reasons it cannot be sued as a jural person under Rule 17(b)." Because Pennsylvania law allows an unincorporated association to be sued as an entity, the purpose of Rule 23.2 has been served. Therefore, it is unavailable for plaintiff's use.

Other courts which have considered this question have reached the same conclusion. In *Lee v. Navarro Savings Association*, 416 F.Supp. 1186, 1190 (N.D.Tex.1976), *rev'd on other grounds*, 597 F.2d 421 (5th Cir. 1979), the court held that

> Rule 23.2 must be read in conjunction with Rule 17(b), which orders that the capacity of an unincorporated association to sue be determined by the law of the state in which the district court is held. If state law allows the association to sue

as an entity, then a class action under Rule 23.2 is not available.

The court further determined that Texas law permitted the real estate investment trust in question to sue and be sued as an entity, *see* Tex.Rev.Civ.Stat.Ann. Art. 6138A, § 6(A)(2), and concluded that plaintiff could not bring the suit as a class action under Rule 23.2.[5] In *Suchem, Inc. v. Central Aguirre Sugar Co.*, 52 F.R.D. 348, 355 (D.P.R. 1971), the court held that

> when the law of the state in a particular case does not provide an unincorporated association with capacity as a jural person to sue or be sued, then and *only* then does the mechanism of Rule 23.2 come into operation and is available as a way of overcoming this lack of capacity by suing the individual representatives of the unincorporated association. This, as a result, gives the unincorporated association the so called entity treatment. Nevertheless . . . the purposes of diversity jurisdiction in cases where one of the parties is an unincorporated association, even if the association has the capacity to sue or to be sued according to state law, what controls is the residence of its members. (emphasis in the original)

The court concluded that Rule 23.2 was not available since Puerto Rican law accorded an unincorporated association the capacity to sue and be sued. P.R.Laws Ann. art. 27–30.[6]

Similarly, having been afforded entity but not class treatment by Pennsylvania law for an unincorporated association, plaintiff cannot use Rule 23.2 to accomplish otherwise. To allow him to do so would impermissibly expand the jurisdiction of this Court. *See* Fed.R.Civ.P. 82 ("[t]hese rules shall not be construed to extend . .

its common name for the purpose of enforcing for or against it a substantive right existing under the Constitution or laws of the United States . . . ."

4. Pa.R.Civ.P. 2153(a) provides that

[i]n an action prosecuted against an association it shall be sufficient to name as defendant either the association by its name, whether the same is registered, filed or not, or any

officer of the association as trustee ad litem for such association in the manner prescribed by Rule 2152.

5. The Supreme Court affirmed on review. *See* n. 2.

6. *See also Patrician Towers Owners, Inc. v. Fairchild*, 513 F.2d 216 (4th Cir. 1975).

the jurisdiction of the United States district courts"). Sitting in diversity, this Court acts as an auxiliary to the state judicial system. If the state courts would not recognize a class suit against an unincorporated association, neither can this Court. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).[7] Principles of federalism admit of no alternative, and the precepts governing the appropriate scope of federal diversity jurisdiction agree. As the Court of Appeals summarized,

> federal courts are without power to adjudicate the substantive claims in a lawsuit absent a firm bedrock of jurisdiction. . . . Not only may an improper exercise of judicial authority by the federal courts, in contravention of constitutional and statutory dictates, disrupt the carefully crafted and balanced system of federalism designed by the framers of the Constitution, but unnecessary proceedings would certainly require the expenditure of valuable judicial resources as well. . . . [T]he concerns of judicial economy and of due respect for the principles of federalism are most apposite where . . . matters of diversity jurisdiction are implicated. To ignore the constitutional and statutory strictures regarding such jurisdiction would impose additional burdens on a federal judicial system which already strains to process cases that are necessarily lodged with it. Relaxation of diversity requirements, intentional or otherwise, inevitably will increase access to the federal courts by litigants now confined to state courts, thereby augmenting the volume of business of the federal tribunals. Such an occurrence also may postpone or even forestall the vindication of the rights of litigants—criminal and civil—who are properly in the federal courts.

> [F]ederal tribunals should be demanding in evaluating whether diversity subsists . . . [A]ccess to federal courts, on the grounds of the diverse citizenship of the parties, should be granted only where clearly appropriate and only to the extent, if at all, that is justified . . . [D]iversity jurisdiction cannot be exercised, unless there has been a definitive determination that diversity of citizenship is present.

*Carlsberg Resources Corp. v. Cambria Savings & Loan Association*, 554 F.2d 1254, 1256–57 (3d Cir. 1977).

Because the present record does not disclose whether any member of CRA was a citizen of the District of Columbia on the date which plaintiff filed this action, defendants' present motion to dismiss must remain under advisement.[8] Within thirty days of the date of the accompanying order defendants shall submit to the Court some indication of the CRA membership's citizenship. After reviewing this information, the Court will enter an appropriate order disposing of defendants' motion in the manner indicated by the submitted information.

---

**7.** *See also Edelson v. Soricelli*, 610 F.2d 131, 139 (3d Cir. 1979) ("federal plaintiffs are entitled to no better treatment than state plaintiffs"), *Stoner v. Presbyterian University Hospital*, 609 F.2d 109, 111 (3d Cir. 1979) ("[t]he fortuity of diverse citizenship should not subject a litigant to legal burdens different from those that a state court would impose"), and *Mattioni, Mattioni & Mattioni, Ltd. v. Ecological Shipping Corp.*, 484 F.Supp. 814 (E.D.Pa. 1980) (action remanded where plaintiff alleged claims against non-diverse defendants).

**8.** We have considered all other contentions raised by the parties and find them without merit. The motion to dismiss of defendant Michael Klinefelter also continues under advisement.

Subsequent to the preparation of this opinion defendants filed an affidavit which casts doubt upon the domicile of plaintiff in Washington, D. C. If the information submitted to the Court by defendants in compliance with the order entered this day indicates that some CRA members have citizenship in the District of Columbia, the matter may be mooted. Therefore, this aspect of the case will remain under advisement, too.