**PEERLESS INSURANCE COMPANY; The Netherlands Insurance Company**

v.

**AETNA CASUALTY & SURETY COMPANY, Berkshire Mutual Insurance Company, Commercial Union Insurance Company, Plymouth Rock Assurance Corporation, The Commerce Insurance Company, United States Fidelity & Guaranty Company, on behalf of themselves and all other members of the Commonwealth Automobile Reinsurers.**

**Civ. No. 87–490–D.**

United States District Court, D. New Hampshire.

May 4, 1990.

Ronald L. Snow, Concord, N.H., for plaintiffs.

Peter F. Kearns, Portsmouth, N.H., Steven E. Hengen, Concord, N.H., for defendants.

## ORDER

DEVINE, Chief Judge.

Peerless Insurance Company and The Netherlands Insurance Company ask the Court to declare that they have no obligation to pay millions of dollars claimed by Commonwealth Automobile Reinsurers ("CAR"), a Massachusetts reinsurance association. Before the Court is defendants' motion to dismiss which, in relevant part, details defendants' contention that this Court is without jurisdiction to hear the case.

### Background

Plaintiffs are citizens of New Hampshire. Both have sold automobile insurance in Massachusetts for many years. In Massachusetts, automobile insurance is regulated comprehensively by state statutes, Mass. Gen.L. ch. 175, § 113H, Division of Insurance regulations, 211 C.M.R. §§ 7.01–.08, and Rules of Operation adopted in accordance with the state's reinsurance association, CAR. All companies licensed to sell motor vehicle liability insurance in Massachusetts are required to maintain membership in CAR and to abide by CAR's rules of operation. Those rules require CAR members to fund deficits incurred by the association according to each member's share of the market.

Plaintiffs' share of the CAR deficit was substantial. In 1984, their share was $7,851,000; in 1985, it was $13,370,000; in 1986, it was $16,062,000.[1] They progressively reduced the proportion of motor vehicle insurance they wrote in Massachusetts from approximately 3.2 percent of the market in 1982, to 1.6 percent of the voluntary market in 1985.

In 1983, CAR adopted rules governing the allocation of CAR deficits. Rule 11 of the CAR Rules of Operation provides that

---

1. CAR has always operated at a huge deficit. Plaintiffs describe that deficit as follows:

   The CAR deficit, which is calculated on a fiscal year basis running from October 1 to September 30, has increased substantially over the past years. In 1983, the Massachusetts Motor Vehicle Reinsurance Facility (reconstituted as CAR effective January 1, 1984) deficit was approximately $199,545,000. In 1984, the CAR deficit was approximately $270,873,000. In 1985, the CAR deficit was approximately $425,759,000. In 1986, the CAR deficit was approximately $566,719,000. In 1987, the projected CAR deficit is likely to be in excess of $680,000,000.

   Complaint ¶ 27.

each company's share of the CAR deficit for the years 1984 to 1988 will be based on the share of the voluntary market that each insurer had *in 1982*, decreased by not more than five percent in 1985 and two and one-half percent in subsequent years. As explained by plaintiffs,

> The unique feature of § 113H and the CAR Plan is that losses are not divided in proportion to a member company's current share of the motor vehicle insurance market in Massachusetts. Instead, a member company's share of the losses and, accordingly, the size of its allocation or assessment by CAR, is determined primarily by the member company's share of the motor vehicle insurance market in the year 1982. While a member company's post–1982 experience may be vastly different from what it was in 1982, the member company is locked into, or "capped" by, a formula based on that company's 1982 share of the market.

Complaint ¶ 25.

In February 1986, plaintiffs notified the Massachusetts Commissioner of Insurance that it would stop issuing auto insurance in Massachusetts if no relief from the deficits was available. No relief was forthcoming, and on June 20, 1986, plaintiffs gave official notice to the Commissioner that it would terminate its license to write motor vehicle insurance in Massachusetts.

On July 31, 1986, the Commissioner issued an order enjoining plaintiffs from withdrawing from the market. Plaintiffs appealed that order, and a state superior court ruled that the injunction was unlawful. That ruling was upheld by the Massachusetts Appeals Court. Plaintiffs have issued no new or renewal policies in Massachusetts since September 30, 1986.

Despite the rulings by both Massachusetts courts, CAR maintains that plaintiffs still owe in excess of $20,000,000, their share of the 1987 deficit.

*Discussion*

Plaintiffs originally brought this action against CAR. Since subject matter jurisdiction is predicated on 28 U.S.C. § 1332(a)(1), the action is properly before the Court only if CAR is not a citizen of New Hampshire.[2]

■ CAR, an unincorporated association, is considered a citizen of each state in which its member organizations are citizens. *See Rockwell Int'l Credit v. United States Aircraft Ins. Group*, 823 F.2d 302, 304 (9th Cir.1987); *Trombino v. Transit Casualty Co.*, 110 F.R.D. 139, 144 (D.R.I. 1986); *Windward City Center of Hawaii v. Transamerica Occidental Life Ins. Co.*, 613 F.Supp. 1216, 1217 (D.Hawaii 1985); *Consumers Savings Bank v. Touche Ross & Co.*, 613 F.Supp. 249, 251 (D.Mass.1985). At least three CAR members are New Hampshire citizens. CAR is therefore considered a citizen of New Hampshire, and this action cannot be maintained against it.

■ On May 2, 1988, plaintiffs amended their complaint. The new complaint named as defendants a class consisting of all CAR members, and, as representative defendants, plaintiffs named seven CAR members that are not citizens of New Hampshire.[3] Such a strategy has been recognized by the Federal Rules of Civil Procedure since Rule 23.2 was made effective on July 1, 1966. Rule 23.2 states:

> An action brought by or against the members of an unincorporated association as a class by naming certain members as representative parties may be maintained only if it appears that the representative parties will fairly and adequately protect the interests of the association and its members. In the conduct of the action the court may make appropriate orders corresponding with those described in Rule 23(d), and the procedure for dismissal or compromise of the

**2.** 28 U.S.C. § 1332(a)(1) vests this court with original jurisdiction over civil disputes between citizens of different states which involve more than $50,000. The amount in controversy plainly exceeds the statutory minimum. The court, then, has jurisdiction in this action only if plaintiffs and defendants are citizens of different states.

**3.** Plaintiffs later dismissed the action against Allstate Insurance, one of the class representatives.

action shall correspond with that provided in Rule 23(e).

Defendants argue that the class mechanism recognized in Rule 23.2 is only available when the unincorporated association cannot be sued as an independent entity. Support for that position is found in *Patrician Towers Owners, Inc. v. Fairchild*, 513 F.2d 216 (4th Cir.1975); *Underwood v. Maloney*, 256 F.2d 334 (3d Cir.), *cert. denied*, 358 U.S. 864, 79 S.Ct. 93, 3 L.Ed.2d 97 (1958); *Nat'l Bank of Washington v. Mallery*, 669 F.Supp. 22, 25 (D.D.C.1987); *Lang v. Windsor Mount Joy Mut. Ins. Co.*, 493 F.Supp. 97, 99 (E.D.Pa.1980); *Suchem, Inc. v. Central Aguirre Sugar Co.*, 52 F.R.D. 348 (D.P.R.1971). Plaintiffs disagree, arguing that Rule 23.2 is available regardless of whether the association is subject to suit in its own name. *See Kerney v. Fort Griffin Fandangle Ass'n*, 624 F.2d 717 (5th Cir.1980) (purpose of Rule 23.2 was "clearly to enlarge, not contract, the authorization for class actions against unincorporated associations"); *Oskoian v. Canuel*, 269 F.2d 311 (1st Cir.1959); *Lumbermen's Underwriting Alliance v. Mobil Oil Corp.*, 612 F.Supp. 1166 (D.Idaho 1985); C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure: Civil 2d* § 1861 (1986) ("Rule 23.2 is a procedural device that provides a supplementary method for unincorporated associations to litigate in a federal court"). *Accord,* 3B J. Moore & J. Kennedy, *Moore's Federal Practice* ¶ 23.2.01 (1985); Note, *Capacity and Class Action Under Federal Rule 23.2*, 61 B.U. L.Rev. 713 (May 1981).

Very recently, this circuit's court of appeals adopted the more restrictive application of Rule 23.2. In *Northbrook Excess and Surplus Ins. Co. v. The Medical Malpractice Joint Underwriting Ass'n of Mass.*, 900 F.2d 476, 479 (1990), the First Circuit Court of Appeals held "that the availability of Rule 23.2 turns, *inter alia*, on the unincorporated association's capacity to sue and be sued as a jural entity under state law."[4] Thus, if CAR can institute or defend a suit in its common name under state law, Peerless may not use Rule 23.2 to bring a class action against CAR members in federal court.

As plaintiffs concede, "governing New Hampshire law allows ... suit to be brought against an unincorporated association as an entity." Memorandum in Opposition to Defendants' Motion to Dismiss at 16–17. *See Shortlidge v. Gutoski*, 125 N.H. 510, 516, 484 A.2d 1083, 1087 (1984); RSA 510:13. Thus, it is undisputed that CAR may be sued as a jural entity under New Hampshire law.[5]

Because Rule 23.2 is not available to these plaintiffs, this Court is without jurisdiction to resolve the instant dispute. Accordingly, defendants' motion to dismiss must be and herewith is granted.

SO ORDERED.

---

**4.** The *Northbrook* holding is based in part on the Advisory Committee note concerning Rule 23.2 which states as follows:

> Although an action by or against representatives of the membership of an unincorporated association has often been viewed as a class action, the real or main purpose of this characterization has been to give "entity treatment" to the association when for formal reasons it cannot sue or be used as a jural person under Rule 17(b).

Rule 17(b) provides that the capacity of an unincorporated association to be sued "shall be determined by the law of the state in which the district court is held."

**5.** Application of Massachusetts law compels the same conclusion. *See, e.g., The Hartford Accident & Indemnity Co. & others v. Commissioner of Ins. & Commonwealth Automobile Reinsurers,* 407 Mass. 23, 551 N.E.2d 502 (1990); *General Accident Ins. Co. v. Commissioner of Ins. & Commonwealth Automobile Reinsurers,* C.A. No. 88–0620 (Suffolk Superior Ct.).