**Robert BENN**

v.

**SEVENTH–DAY ADVENTIST CHURCH, et al.**

**No. CIV. JFM–03–330.**

United States District Court, D. Maryland.

Feb. 18, 2004.

---

David M. Kopstein, Dross, Levenstein, Perilman and Kopstein, Seabrook, MD, Charles C. Graves, II, The Graves Firm, William P. Kelly, McCarthy and Kelly LLP, New York City, for Plaintiff.

Stanley J. Reed, Lauri Elizabeth Cleary, Peter M. Rosenberg, William B. Schroeder, Lerch, Early and Brewer Chtd., Bethesda, MD, for Defendants.

## OPINION

MOTZ, District Judge.

Plaintiff suffered grave injuries in a swimming pool accident at the Victory Heights Bible Camp in Trinidad on April 3, 1999. At the time plaintiff was a student at Caribbean Union College in Trinidad, and he was attending a weekend retreat sponsored by the Pathfinder Club. Caribbean Union College is affiliated with Andrews University located in Berrien Springs, Michigan, and both institutions are affiliated with the Seventh–Day Adventist religion. The Pathfinder Club likewise is a Seventh–Day Adventist organization.

Plaintiff is a citizen of Guyana. In July 1999, after several months of hospitalization in Trinidad, he moved to the United States. He resides with family members in New Jersey where he continues to receive treatment and rehabilitation for his injuries.

On March 16, 2001, plaintiff filed this action in the United States District Court for the District of New Jersey against the Seventh–Day Adventist Church ("the Church") and various "John Doe" defendants.[1] He alleged that the

---

1. As my brief statement of the facts suggests, a serious question exists as to whether the doctrine of *forum non conveniens* should be applied. I have little doubt that if I did have jurisdiction over this action, I would exercise my discretion not to entertain it on the basis of that doctrine. All of the private and public interest factors delineated by the Supreme Court in *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981) weigh in favor of a *forum non conveniens* dismissal. With regard to the private interest factors, virtually all of the proof and all of the witnesses (except for the plaintiff himself) are located in Trinidad, and the accident in question occurred there. Moreover, this court has no mechanism for compelling the attendance of witnesses who reside in Trinidad, and to the extent defendants might want to implead other parties (Victory Heights Church and Campground or the lifeguard on duty, for example), trial in Maryland will hinder their ability to do so. *See Dunham v. Hotelera Canco S.A. de C.V.*, 933 F.Supp. 543, 555 (E.D.Va.1996).

As for the public interest factors, this appears to be exactly the sort of "localized controversy" which the Supreme Court has indicated should be decided "at home." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947). Although plaintiff seeks to limit the defendants in this case to United States citizens, the accident occurred in Trinidad, and Trinidad has an interest in determining how to assess liability against those responsible for injuries suffered there. *See Dunham*, 933 F.Supp. at 555. Furthermore, Maryland choice of law rules adhere to the principle of *lex loci delicti* in personal injury cases, and thus the law of the place of injury is applied. *Sherrod v. Achir*, 149 Md.App. 640, 817 A.2d 951, 955–56 (2003). A trial in Maryland would require this court to apply the law of Trinidad, another factor weighing in favor of dismissal. *Gilbert*, 330 U.S. at 509, 67 S.Ct. at 843. Additionally, the fact that the plaintiff is a foreign

Church and its "servants, agents or employees" were negligent and reckless in "operating, conducting, managing, controlling, supervising, overseeing, directing and sponsoring the Pathfinder Camp." Plaintiff also alleged that the Church "owned, operated, controlled, maintained and/or managed the premises where plaintiff's accident occurred and was responsible for keeping the aforementioned premises safe, secure and to select and hire competent" staff to assist in the operation of the camp. Plaintiff made the same allegations against the John Doe defendants.[2]

The Church moved to dismiss the complaint. The Church argued, among other things, that the "Seventh–Day Adventist Church" is not a legal entity and that the court lacked subject matter jurisdiction. In responding to the motion, plaintiff filed an amended complaint in which he added as defendants the General Conference Corporation of Seventh–Day Adventists Incorporated, ("GCI") and Caribbean Union College.[3] After jurisdictional discovery had been conducted and attempts at mediation had failed, defendants filed a motion to dismiss the original complaint and the amended complaint, and plaintiff filed a motion seeking leave to file a second amended complaint. Defendants' motion again raised various issues, including a challenge to the court's subject matter jurisdiction and a defense of improper ven-

citizen means his choice of the United States as a forum is entitled to less deference. *Piper Aircraft*, 454 U.S. at 256, 102 S.Ct. at 266.

In *Piper Aircraft* the Supreme Court indicated that if "the remedy provided by the ... [foreign] forum is so clearly inadequate or unsatisfactory that it is no remedy at all," a district court might exercise its discretion not to apply the *forum non conveniens* doctrine. 454 U.S. at 254, 102 S.Ct. at 265. Plaintiff has submitted an affidavit he has obtained from a Trinidad lawyer that he would be likely to obtain in Trinidad only $40,000 to $60,000 in damages for pain and suffering and loss of enjoyment of life. Relying solely upon this affidavit, plaintiff argues that his remedy in Trinidad is "clearly inadequate and unsatisfactory."

This argument appears to be without merit. Generally, it has been held that a difference in recoverable damages in the different forums is not a basis for declining to dismiss on *forum non conveniens* grounds. *See, e.g., Iragorri v. Int'l Elevator, Inc.*, 203 F.3d 8, 14 (1st Cir.2000), *De Melo v. Lederle Laboratories*, 801 F.2d 1058, 1061 (8th Cir.1986), *Alcoa Steamship Co., Inc. v. M/V Nordic Regent*, 654 F.2d 147, 159 (2d Cir.1980). Plaintiff has offered no persuasive reason why this rule should not apply here. Plaintiff does not deny that Trinidad law confers a right of action upon him. Indeed, he has filed a protective lawsuit there. Moreover, he concedes that under Trinidad law he can recover all of his medical expenses, lost earnings and other pecuniary losses. While he contends that as a matter of practice, the recovery of nonpecuniary losses is limited, he concedes that there is no such limitation mandated by law. More fundamentally, plaintiff does not contend that he would be treated differently from any other person injured in a similar accident in Trinidad. Nor has he explained why his decision to move to the United States should entitle him to more substantial damages than other persons similarly situated who continue to reside in Trinidad (or return to their home country). He also has not suggested any reason why the Seventh–Day Adventist entities situated in the United States should be subjected to greater damages than organizations (profit or nonprofit) operating within Trinidad. Finally, plaintiff has articulated no public policy interest requiring vindication in the United States.

2. The record establishes that Victory Heights Bible Camp, where the accident occurred, is owned by the Victory Heights Church. The record further establishes that the Victory Heights Church is not a church of the Seventh–Day Adventist faith and that neither the church nor its campground is owned by any Seventh–Day Adventist entity.

3. Plaintiff sought leave to file this amended complaint. That was unnecessary, however, since Fed.R.Civ.P. 15(a) provides that "[a] party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served."

ue.[4] Deciding only the venue question, the New Jersey court, pursuant to 28 U.S.C. § 1406(a), transferred the action to Maryland, where the business operations of the Church are headquartered.

After the transfer to Maryland, the case was initially assigned to Judge Deborah Chasanow. Judge Chasanow requested that plaintiff's motion to file a second amended complaint be refiled in accordance with the format prescribed by this court's Local Rules. The motion has now been fully briefed. Because of a temporary imbalance in caseload, the case was transferred to me. Presently pending before me are plaintiff's motion for leave to file a second amended complaint as well as the issues raised by defendants' motion to dismiss that were not resolved by the New Jersey court.

## I.

■ The first question to be addressed is whether I have subject matter jurisdiction to entertain plaintiff's motion for leave to file a second amended complaint (and, indeed, whether the New Jersey court had subject matter jurisdiction to consider any proposed amendments). In my view I lack such jurisdiction.

The only non-John Doe defendant named in the original complaint was the Seventh–Day Adventist Church. The record established by the jurisdictional discovery that has been taken reveals that there is no legal entity known as the "Seventh–Day Adventist Church." Simply stated, the Seventh–Day Adventist Church is a religion, not a cognizable legal entity. That said, the record further reveals the General Conference Unincorporated ("GCU") is the Church's most authoritative body. The GCU has various operational units called "divisions" throughout the world, and, fairly construing the original complaint, it might be said that plaintiff intended to sue the GCU when he named as a defendant the "Seventh–Day Adventist Church."[5]

■ If a misnomer were the only jurisdictional difficulty presented by the original complaint, it could be cured under 28 U.S.C. § 1653, which provides that "[d]efective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts." However, there is a more fundamental jurisdictional defect. The record establishes that the membership of the GCU consists of union conferences and union missions, whose own memberships consist, in turn, of local churches, missions, health care institutions, publishing houses, schools and other organizations." Seventh–Day Adventist Church Manual 27 (16th ed.2000). Because the GCU is an unincorporated association, the citizens of each of these constituent units must be individually considered for diversity purposes. See Navarro Sav. Ass'n v. Lee, 446 U.S. 458, 461, 100 S.Ct. 1779, 1782, 64 L.Ed.2d 425 (1980), Clephas v. Fagelson, Shonberger, Payne & Arthur, 719 F.2d 92, 93 (4th Cir.1983). Some of them are aliens, as is plaintiff himself. Therefore,

**4.** Other issues raised by the motion to dismiss included *forum non conveniens*, insufficiency of service, lack of personal jurisdiction, and failure to state a claim upon which relief could be granted.

**5.** The parties dispute the role played by the GCU. Plaintiff alleges that it conducts the Church's business affairs. Defendants contend that this characterization suggests far too active a management role. According to them, while the GCU does have the ultimate responsibility and authority to assure that all aspects of Seventh–Day Adventism are conducted in accordance with the religion's tenets and theological principles, it cannot and does not exercise this authority over any day-to-day operations. Although the record appears to substantiate defendants' position, I need not resolve this dispute because it is immaterial to the jurisdictional questions before me.

diversity of citizenship was lacking when this suit was filed even if the GCU is deemed to be the party whom plaintiff should have named. *See, e.g., Ruhrgas AG v. Marathon Oil Co.,* 526 U.S. 574, 583, 119 S.Ct. 1563, 1570, 143 L.Ed.2d 760 (1999), *Dewhurst v. Telenor Invest AS,* 83 F.Supp.2d 577, 595 (D.Md.2000).

■ 28 U.S.C. § 1653 cannot be employed to remedy this defect. The Supreme Court has held that section 1653 permits amendments only to remedy "incorrect statements about jurisdiction that actually exists, and not defects in the jurisdictional facts themselves." *Newman–Green, Inc. v. Alfonzo–Larrain,* 490 U.S. 826, 831, 109 S.Ct. 2218, 2222, 104 L.Ed.2d 893 (1989). Section 1653 is "not to be used to create jurisdiction retroactively where it did not previously exist." *Aetna Casualty & Surety Co. v. Hillman,* 796 F.2d 770, 775 (5th Cir.1986).

*Berkshire Fashions, Inc. v. M.V. Hakusan II,* 954 F.2d 874 (3d Cir.1992), a case cited by plaintiff, is not to the contrary. There, the district court was found to have abused its discretion in denying leave to amend to plead a new basis for jurisdiction and to drop a party destroying diversity. *Berkshire Fashions* does not however, contravene the holding of *Newman–Green* because the new basis for jurisdiction, diversity jurisdiction, existed when the suit was filed. *Id.* The plaintiff did not plead diversity initially because it had invoked admiralty as the basis for subject matter jurisdiction. It was only after the district court held that the case was not subject to admiralty jurisdiction that the plaintiff sought leave to amend to plead diversity. Furthermore, a plaintiff's amendment to drop a non-diverse party to perfect diversity jurisdiction is "distinct" from an amendment—such as the ones proposed by plaintiff here—that would add new parties to create diversity where none existed in the first instance. *Aetna,* 796 F.2d at 774. Dropping a non-essential non-diverse party merely cures defective jurisdiction, it does not create it out of thin air, as plaintiff would seek to do in this case by adding a diverse defendant not originally named.[6]

## II.

If my ruling that I lack subject matter jurisdiction to entertain plaintiff's motion

---

6. Several district courts have drawn a distinction between amendments made as of right, and those for which parties must seek leave of the court. *Integrated Tech. & Dev., Inc. v. Rosenfield,* 103 F.Supp.2d 574, 579 (E.D.N.Y.2000)(citing *Am. Charities for Reasonable Fundraising Regulation, Inc. v. Shiffrin,* 46 F.Supp.2d 143, 154 (D.Conn.1999)). Those courts have held that the absence of subject matter jurisdiction poses no obstacle to an amendment as of right since no judicial intervention is necessary to permit the amendment. However, the Fifth Circuit has suggested that an amendment, even as of right, is not effective to create jurisdiction where none existed because if the party seeking amendment lacked the ability to bring the suit in federal court in the first place, the party does not have the ability to amend. *Aetna,* 796 F.2d at 774.

Although it appears to me that the Fifth Circuit's observation is correct, I need not decide the point. Plaintiff's first amended complaint (which could have been filed as of right) did add one nondiverse party, the GCI. However, plaintiff failed to state against the GCI a claim upon which relief could be granted because he made no allegations to show that the GCI (whose purpose is to own certain real estate and intellectual property rights) owed or breached any duty to plaintiff. Moreover, assuming that the GCI was properly added as a defendant, complete diversity was still lacking because plaintiff continued to name the Church as a defendant as well. That jurisdictional problem could not be cured by using the technique approved in *Berkshire Fashions* of dropping the Church as a defendant because, as reflected in the second proposed amended complaint, plaintiff himself continues to attempt to assert a claim against the Church (as well as the GCU, another nondiverse party).

to file a second amended complaint is correct, plaintiff's motion must be denied on that ground alone. Assuming, however, that I do have subject matter jurisdiction to entertain the motion, I would nevertheless deny it.

#### The Church and the GCU

■ Plaintiff continues to seek to state a claim against the Church in the proposed second amended complaint. However, apparently recognizing that the membership of "the Church" includes aliens who would destroy diversity jurisdiction, plaintiff seeks to circumvent that problem by naming five individuals as representatives of the Church [7] and seeks to bring the action under Fed.R.Civ.P. 23.2. Likewise, plaintiff seeks to sue the GCU under Rule 23.2 by naming the same individuals as the GCU's representatives.

Rule 23.2 provides in relevant part as follows:

> An action brought by or against the members of an unincorporated association as a class by naming certain members as representative parties may be maintained only if it appears that the representative parties will fairly and adequately protect the interests of the association and its members.

The Advisory Committee notes to the rule state that its "real or main purpose ... has been to give 'entity treatment' to the association when for formal purposes it cannot sue or be sued as a jural person under Rule 17(b)." Referring to this statement, most courts have held that the availability of Rule 23.2 turns on the unincorporated association's capacity to sue and be sued under state law. *See Northbrook Excess and Surplus Ins. Co. v. Medical Malpractice Joint Underwriting Ass'n of Massachusetts,* 900 F.2d 476, 479 (1st

Cir.1990), *Indiana Gas Co., Inc. v. Home Ins. Co.,* 141 F.3d 314 (7th Cir.1998), *rehearing denied,* 141 F.3d 314, 321 (1998), *Nat'l Bank of Washington v. Mallery,* 669 F.Supp. 22, 24–25 (D.D.C.1987), *Lang v. Windsor Mount Joy Mutual Ins. Co.,* 493 F.Supp. 97, 99 (E.D.Pa.1980), *Lee v. Navarro Savings Ass'n,* 416 F.Supp. 1186, 1190 (N.D.Tex.1976), *rev'd on other grounds,* 597 F.2d 421 (5th Cir.1979), *Suchem, Inc. v. Central Aguirre Sugar Co.,* 52 F.R.D. 348, 351–56 (D.P.R.1971). Thus, according to these cases, where state law allows an unincorporated association to sue or be sued as an entity, Rule 23.2 is unavailable.

The Fourth Circuit has not yet specifically decided this issue. It has, however, noted that the restrictive interpretation adopted by most courts "finds strong support in the Advisory Committee's notes." *Patrician Towers Owners, Inc. v. Fairchild,* 513 F.2d 216, 220 (4th Cir.1975). Thus, I believe it likely that the Fourth Circuit would find that Rule 23.2 is not available where an unincorporated association is subject to suit under applicable state law. Because Maryland law does provide that unincorporated associations have the right to sue and be sued, Md. Code Ann., Cts. & Jud. Proc. § 6–406, on that ground alone Rule 23.2 may not be used by plaintiff as a device to sue the Church and the GCU.

■ Even assuming, however, that in some contexts Rule 23.2 should be read more broadly, plaintiff's attempt to use the rule here as a device to sue the Church and the GCU is flawed for several reasons. First, as indicated above, the Church is not a jural entity at all. Second, while the GCU is an unincorporated association subject to suit, it is composed not of individuals but of other church units. Thus, the

---

**7.** Even as to these individuals, plaintiff's jurisdictional averments are insufficient since he alleges only that they are "residents," not

"citizens," of the United States. *See Axel Johnson, Inc. v. Carroll Carolina Oil Co., Inc.,* 145 F.3d 660, 663 (4th Cir.1998).

persons plaintiff names to represent it cannot serve as class representatives at all. Third, as the Seventh Circuit has noted, Rule 82 is "emphatic" that a rule of procedure may not "expand the subject matter jurisdiction of the federal courts." *Indiana Gas*, 141 F.3d at 321. Therefore, Rule 23.2 cannot be used to manufacture diversity; the complete diversity requirement "cannot be transmuted into a minimal diversity requirement so easily." *Id.* See also *Lang*, 493 F.Supp. at 99–100 (citing Rule 82 for its conclusion that using Rule 23.2 to create diversity "would impermissibly expand the jurisdiction of this court."), *McAuslin v. Grinnell Corp.*, 2000 WL 1059850, *9 (E.D.La. Aug. 1, 2000)("To allow plaintiffs to avail themselves of Rule 23 or Rule 23.2 here would extend the limits of statutorily conferred jurisdiction through the expediency of a procedural rule. But federal 'jurisdiction is not a game.' And the Court cannot countenance this result...Such a facile recharacterization by plaintiffs would fly in the face of Rule 82...").

In sum, because Rule 23.2 is not available when state law allows an unincorporated association to sue or be sued as an entity, and because to hold otherwise would "impermissibly expand" the jurisdiction of this court, Rule 23.2 is not available to plaintiff.[8]

## Caribbean Union College and Andrews University

■ Plaintiff also seeks in the proposed second amended complaint to drop Caribbean Union College as a defendant and to substitute Andrews University in its place. Caribbean Union's continued presence in the case is yet another factor that destroys diversity, and defendants therefore oppose its being dropped as a party. In support of their position they rely on the allegations made by plaintiff as bases for Caribbean Union's liability that the college advertised the Pathfinder Club event and that it is affiliated with the Seventh–Day Adventist Church. It may well be that these allegations were not sufficient to state a claim against Caribbean Union upon which relief can be granted. They certainly are insufficient to render Caribbean Union an indispensable party.

As for Andrews University, defendants argue that even if this court possessed subject matter jurisdiction to entertain the motion for leave to file a second amended complaint, the motion should be denied on the ground of futility.[9] That argument is meritorious because any claim against Andrews University would be time-barred.

■ All potentially applicable limitations statutes have run.[10] Thus, in order for plaintiff's claim to be timely, it must relate back to the filing of the original

---

8. As plaintiff pointed out during oral argument, Rule 23 allows the maintenance of class actions in which some members of the class are of the same citizenship as a defendant. *See, e.g., Snyder v. Harris*, 394 U.S. 332, 340, 89 S.Ct. 1053, 1059, 22 L.Ed.2d 319 (1969), *In re School Asbestos Litig.*, 921 F.2d 1310, 1317 (3d Cir.1990). However, it obviously is different to interpret the class action rules as permitting a class to include nondiverse members than it would be to use the rules as a device for changing the citizenship of an individual party to render it nondiverse. The latter would constitute an action far beyond a court's rule-making authority.

9. Defendants also correctly point out that plaintiff has made no allegations sufficient to

sustain the exercise of personal jurisdiction over Andrews University in Maryland. If that were the only issue, leave to file yet a third amended complaint might be appropriate.

10. Although the issue is academic since none of the potentially applicable statutes of limitations are longer than Maryland's three-year statute, it appears clear that Maryland law applies. A federal court sitting in diversity must generally apply the law that would be applied by a court of the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941). Where, as here, a case is transferred for improper venue under 28 U.S.C. § 1406, the transferee court must apply the law of the

claim under Fed.R.Civ.P. 15(c). Three elements must be satisfied to qualify for relation back under Rule 15(c) when a plaintiff seeks to add a new party. First, the claim must involve the same transaction or occurrence. Second, the new party must have notice of the action within the period provided by Rule 4(m) for service of the summons and complaint such that the party will not be prejudiced in maintaining a defense on the merits. Third, the new party must have known or should have known that, but for a mistake in identity, the action would have been brought against him.

■ The parties dispute the second and third (but not the first) of these elements. In arguing for relation back, plaintiff places a great deal of emphasis on the "identity of interest" principle. This principle provides that added parties are deemed to have received constructive notice where the original and added parties are "so closely related in business or other activities that it is fair to presume the added parties learned of the institution of the action shortly after it was commenced." *Hernandez Jimenez v. Calero Toledo,* 604 F.2d 99, 102–03 (1st Cir.1979). While the "identity of interest" concept has been adopted by some courts of appeals, it has not been formally adopted by the Fourth Circuit. However, the Fourth Circuit has recognized that notice "may be presumed" when "the added defendant has either a sufficient identity of interest with the original defendant or received formal or informal notice of the claim." *See Western Contracting Corp. v. Bechtel Corp.,* 885 F.2d 1196, 1201 (4th Cir.1989).

It may be fair to presume that Andrews had notice of the lawsuit based on its affiliation with Caribbean Union.[11] Notice, however, alone is not enough. In *Bechtel,* the court went on to say that even if it agreed that notice had been sufficient, this did not excuse plaintiffs from their obligation to demonstrate that the new party "knew or should have known, that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party." *Id.,see also Hernandez Jimenez,* 604 F.2d at 103 (holding that the identity of interest concept bears only on the notice requirement). Therefore, the critical question presented here is whether Andrews had such knowledge.

■ When plaintiff did eventually seek leave to add Andrews as a party in the proposed second amended complaint, the only support cited for this addition was information available to plaintiff at the time of the motion to file a first amended complaint, that is that Andrews University and Caribbean Union College were affiliated universities, and plaintiff was enrolled in an academic program whereby he was to receive a degree from Andrews University.[12] Thus, the mistake plaintiff made in

state in which it sits rather than the law of the state of the transferor court. *LaVay Corp. v. Dominion Federal Savings & Loan Ass'n,* 830 F.2d 522, 526 (4th Cir.1987). For choice of law purposes, Maryland treats statutes of limitations as procedural rather than substantive, and applies Maryland law. *Hartnett v. Schering Corp.,* 806 F.Supp. 1231, 1234 (D.Md. 1992).

11. The claim asserted against Caribbean Union may properly be considered on the question of notice to Andrews University because the first amended complaint in which Carri-

bean Union was joined as a defendant was filed within two years of the accident (the New Jersey limitations period) plus the 120 days allowed by Rule 4(m) for service.

12. I note, but am not required to decide, that the relationship between Andrews University and any entity responsible for supervising activities at the swimming pool where plaintiff was injured is so attenuated that a serious question exists whether plaintiff is able to state a claim upon which relief can be granted against the University. Indeed, plaintiff's own failure to name the University

failing to add Andrews University was not any "mistake of identity." Where a plaintiff seeks belatedly to name a party as a defendant because he had not appreciated that the new party might be liable, that is not an amendment based upon a "mistake of identity." *Rendall–Speranza v. Nassim,* 107 F.3d 913, 919 (D.C.Cir.1997). Courts have consistently distinguished between mistakes as to identity and deliberate choices about who to sue. *Lundy v. Adamar of New Jersey, Inc.,* 34 F.3d 1173, 1183 (3d Cir.1994)("Where there is a basis for the plaintiff to assert liability against the party or parties named in a complaint and there is no reason for another party to believe that plaintiff did anything other than make a deliberate choice between potential defendants, courts have consistently held that the third requirement of 15(c)(3) is not met."), *Louisiana–Pacific Corp. v. ASARCO, Inc.,* 5 F.3d 431, 434 (9th Cir.1993)(finding no mistake by plaintiff, "but rather a conscious choice of whom to sue."). Because plaintiff knew of Andrews University and its relationship with Caribbean Union College at the time he filed his original complaint, his decision to sue only the latter must be viewed as a deliberate choice, not a mistake. Therefore, the second proposed amended complaint, if allowed, would not relate back to Andrews under Rule 15.

A separate order dismissing this action is being entered herewith.

### ORDER

For the reasons stated in the attached Opinion, it is, this 18th day of February 2004

as a defendant until the jurisdictional problems confronting him became manifest

ORDERED that this action be dismissed for lack of subject matter jurisdiction.

seems to suggest that plaintiff himself recognized his inability to do so.